[Civ. No. 645.　Third Appellate District.—October 9, 1909.]

# D. J. CANTY, Appellant, v. JESSE ANDREW BROWN, A. O. HOLTHE, AH SAM and WING KEE, Respondents.

OPTION TO PURCHASE LAND—CONSIDERATION—WANT OF MUTUALITY—COMMUNICATION OF ACCEPTANCE WITHIN DURATION ESSENTIAL.—Whether an option to purchase land is or is not based upon a consideration, there is a want of mutuality of obligation between the grantor and holder of the option, unless it is properly accepted; and the communication of acceptance of its terms must, in either case, be made within the duration of the option. If there is no consideration for the option, it may be revoked at any time before acceptance, which must be communicated prior to any revocation, to make it binding. If the option is based upon a consideration, the acceptance must be communicated within the time expressly limited therefor, else the option expires by limitation, and no deed can be enforced under the contract conferring it.

ID.—ABSENCE OF GRANTOR OF OPTION—EFFORTS TO COMMUNICATE BY TELEPHONE—TELEGRAM SENT AFTER TIME LIMITED.—Notwithstanding the absence of the grantor of the option from his residence, and ineffectual efforts of the grantee to communicate with him by telephone within the time limited for the option, and the sending and receiving of a telegram one day after the expiration thereof, communicating the acceptance of the option, neither such ineffectual efforts nor such telegram changed the relations of the parties, or gave to the holder of the option any rights not conferred by the contract.

ID.—CODE PROVISIONS—MODE OF COMMUNICATING ACCEPTANCE—LOSS OF RIGHT.—The plaintiff, as holder of the option, could, under section 1582 of the Civil Code, have adopted "any reasonable and usual mode" for the "communication of its acceptance"; and under section 1583 of the same code, "consent is deemed to be fully communicated between the parties as soon as the party accepting the proposal has put his acceptance in the course of transmission to the proposer." The plaintiff, not having communicated his acceptance, nor put it in the course of transmission within the time limited by the contract, lost his right to demand a deed.

ID.—ACTION BY GRANTEE OF OPTION FOR SPECIFIC PERFORMANCE—NONSUIT PROPERLY GRANTED.—In an action by the grantee of the option to enforce a specific performance of the contract under which it was conferred, a motion for a nonsuit was properly granted for want of any mutual contract of purchase between the parties.

APPEAL from a judgment of the Superior Court of Tehama County, and from an order denying a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

Stanton L. Carter, John J. Wells, and Carter & Carter, for Appellant.

P. H. Coffman, for Respondents.

CHIPMAN, P. J.—This is an action for specific performance of a certain contract relating to the sale of real estate. The court granted defendants' motion for a nonsuit and plaintiff appeals from the judgment thereupon entered in favor of defendants and from the order denying his motion for a new trial.

The real point at issue arises out of the construction to be given the contract in question, which latter is as follows:

"Memorandum of agreement made and entered into this fifth day of June, 1906, between Jesse Andrew Brown, of Tehama County, State of California, the party of the first part, and D. J. Canty, of Alameda County, State of California, the party of the second part:

"Witnesseth: The party of the first part, for and in consideration of the sum of Four Thousand Dollars (4000), does hereby grant and sell to the party of the second part all fruit on trees now standing in orchard of said first party situate on Thomas Creek, in the County of Tehama, State of California, and known as the 'Westlake Place,' and more particularly described as follows, to-wit:

"Bounded on the north by the Henleyville and Paskenta road, on the west by the lands of Mrs. Barker, on the south by fence between said orchard and Thomas Creek, on the east by fence enclosing said orchard as it now stands from farmed land owned by said first party, and containing 120 acres, more or less.

"The party of the second part shall have the free use of all trays, lug-boxes, cars and other equipment that is now on said place, and which is necessary for the proper harvesting of said fruit. The party of the first part agrees to furnish, free

of charge, one span of mules and harness and wagon during the harvest season.

"The party of the second part agrees to make payment of said $4,000 as follows: $1,000 paid this 5th day of June, 1906, the receipt of which is hereby acknowledged by the party of the first part, the balance, $3,000, to be paid as said fruit is sold. All fruit on said orchard to belong to and be the property of the party of the first part until said rental of $4,000 is paid in full.

"In consideration of the party of the second part complying with the terms of this agreement, the party of the first part does hereby grant unto the party of the second part an option to purchase, during a term of six months from the date of this agreement, all of the lands hereinbefore described, with all permanent improvements now standing on said lands, and a one-half interest in all water rights used in connection with said orchard and other lands, and recorded by said party of the first part as 3000 miner's inches; the purchase price of said land to be Eight Thousand Five Hundred Dollars ($8,500), to be paid by the party of the second part to the party of the first part in sums as follows: $3,500 to be paid on delivery of good and sufficient deed to above premises; the balance, $5,000, to be secured by mortgage on said premises, and to be paid in three equal payments, in one, two and three years from date of deed, with interest at 7 per cent. In the event of the party of the second part making payments as above the party of the first part agrees to deliver to the party of the second part the above-described orchard and enough farming land adjoining on the east side of said orchard to make up 120 acres.

"It is mutually agreed that this agreement, and every part and portion thereof will bind and inure to the benefit of the heirs, administrators and assigns of the respective parties to this agreement.

"In Witness Whereof, the parties to this agreement have hereunto set their hands and seals in duplicate the day and year first above written.

　　　　　　　　"JESSE ANDREW BROWN.　(Seal)
　　　　　　　　"D. J. CANTY.　　　　　　(Seal)"

The motion for nonsuit was upon the following grounds: "That the evidence fails to establish the contract alleged in the complaint; that the evidence fails to establish any agree-

ment between the parties to the action for the sale and pur-
chase of the lands mentioned in the complaint or in the evi-
dence; that the evidence fails to establish any mutual contract
between the parties to the action for the sale or purchase of
any real estate, that the evidence shows that the plaintiff is
not entitled to any relief.''

The contention of appellant is that the judgment is against
the law and the evidence and is thus stated in his specification
of errors: ''The evidence shows that defendant Brown en-
tered into a contract in writing with plaintiff, to sell to plain-
tiff the crops of fruit then here growing on the land, and to
subsequently sell to plaintiff, within six months thereafter,
the land on which said crops were growing, together with a
water right for three thousand miner's inches of water, at
plaintiff's option for the full sum of $12,500,'' of which ''pay-
ments were to be made as set forth in the contract''; that
''it is a single contract, although severable into two parts,
the intent being that the property shall be sold for $12,500;
but that there is no obligation upon plaintiff to take anything
more than the fruit, for which he was to pay $4,000. If he
wanted the real estate he was to pay the balance.''

Where an option is without consideration, it was held in
*Brown* v. *San Francisco Sav. Union,* 134 Cal. 448, [66 Pac.
592], that the owner could revoke the option before the ex-
piration of the time given the optionee if an acceptance of
the option had not been communicated to the owner. In
*White* v. *Bank of Hanford,* 148 Cal. 552, [83 Pac. 698], we
have the case of an option to purchase real estate, with the
crops growing thereon, where there was a consideration. In
that case it was held that there was no mutuality of obliga-
tion, inasmuch as the agreement nowhere imposed any lia-
bility on the proposed purchaser, optionee, to make the
purchase. His right, the court said, was ''to complete the
purchase and compel the execution of a deed [by the owners]
upon performance of the terms of the agreement, *within the
time limited by it.''* The correlative duties of the owners of
the land ''were no other than appear upon the face of the
agreement—to make the deed upon demand of White and a
tender by him *within the time specified in the contract.''* The
distinction between a contract to sell and an option is clearly
stated in *Menzel* v. *Primm,* 6 Cal. App. 204, [91 Pac. 754].

We can discover nothing in the present case that distin-
guishes it from the ordinary case of an option to sell land

upon specified conditions, such as *White* v. *Bank of Hanford,* 148 Cal. 552, [83 Pac. 698].

Plaintiff resided at Oakland, and after making the contract took possession of the property and harvested the fruit crop. He testified that he made inquiries as to defendant Brown's whereabouts between June and November 1, 1906, and on November 1st he was told that Brown "was on his way down from Oregon somewhere, but not within reach at that time, with a band of sheep." He further testified: "After the first day of December, 1906, and before the fifth day of the same month, I tried twice to get Mr. Brown on the telephone. But I was not successful. I couldn't find him. My telephone was directed to Corning, because I always understood that was his postoffice address. . . . The contract was made in Kauffman's store at Corning. On the 5th of December, 1906, I again tried to get Mr. Brown on the telephone and he couldn't be found in Corning.. So, on the morning of the sixth day of December, 1906, I telegraphed Mr. Brown. I read from the carbon copy of the telegram sent. It is as follows: 'Fresno, December 6, —6. Jesse Andrew Brown, Corning. Survey that orchard. I want it at price named in contract. D. J. Canty.' " Witness learned later that the telegram was delivered, but that Brown said it came too late and he refused to make the sale. It was one day after the time limited in the option.

We cannot see that these facts changed the relation of the parties or gave plaintiff any rights not accorded by the contract. Plaintiff could have adopted any reasonable or usual mode to communicate his acceptance (Civ. Code, sec. 1582); and "consent is deemed to be fully communicated between the parties as soon as the party accepting the proposal has put his acceptance in the course of transmission to the proposer." (Civ. Code, sec. 1583.) Not having communicated his acceptance within the time limited by the contract, he lost his right to demand a deed.

For a comprehensive citation of cases upon the subject, see note to *Mier* v. *Hadden,* 118 Am. St. Rep. 592; *Pollock* v. *Brookover,* 60 W. Va. 75, [53 S. E. 795, 6 L. R. A., N. S., 403, and note]; see, also, Pomeroy's Specific Performance, sec. 387.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.