[L. A. No. 23175. In Bank. July 30, 1954.]

DOROTHY C. DAWSON, as Special Administratrix, etc., et al., Appellants, v. CHARLES R. GOFF et al., Respondents.

*Assigned by Chairman of Judicial Council.

312

Warner, Jackson & Sutton, Ridgway Sutton and Caryl Warner for Appellants.

McInnis & Hamilton, McInnis, Hamilton & Fitzgerald and John W. McInnis for Respondents.

CARTER, J.—Plaintiffs, the administratrix of the estate of C. L. Dawson, Jr., deceased, and two other Dawsons, commenced, in Los Angeles County, an action against defendants Goff and Garland, alleging in their complaint that on February 26, 1953, a written contract of sale was made in Los Angeles County in which plaintiffs agreed to sell and defendants to buy 28,800 shares of stock in Grand Stores Company, at $2.53 per share, to be paid within three years with interest at 5 per cent. Plaintiffs' tendered delivery of the stock on February 26th, 1953, was refused by defendants on March 10, 1953, whereupon plaintiffs notified defendants that they would

"hold" defendants liable for damages for breach of the contract. By reason of the market value of the stock at the time of proffered delivery plaintiffs have been damaged at the rate of $2.03 per share, or a total of $66,240.

Thereafter defendants demurred to the complaint and filed a notice of motion for change of venue to San Diego County on the ground that they were residents of that county when the action was commenced.

According to the supporting affidavits defendants are residents of San Diego County and the following instrument was signed by the parties in San Diego County on the date it bears.

"February 28, 1950

"Mr. C. L. Dawson, Jr.
2668 Victoria Drive
Laguna Beach, California

"Dear Mr. Dawson:

"The undersigned hereby agree to purchase from you, your heirs or assigns, upon demand written or verbal at any time after February 28, 1951, not to exceed forty thousand (40,000) common shares of Grand Stores Co for a price of $2.53 per share. The terms of the payment for this stock to be determined by negotiation at the time demand is made but in any case full payment is to be made within three years from that date and interest on deferred payments to be at 5%.

Yours very truly,
/s/ CHARLES R. GOFF
/s/ R. HASTINGS GARLAND
2/28/50

"This agreement terminates if no demand is made on February 28, 1953.

/s/ CHARLES R. GOFF

"Accepted 2/28/1950

/s/ C. L. DAWSON, JR."

Laguna Beach, the address stated for deceased in the instrument, is in Orange County. Apparently the number of shares was changed in writing by the parties to 30,300 on January 17, 1951.

On February 26, 1953, in Los Angeles County, plaintiffs wrote and mailed to defendants in San Diego County a writing entitled Demand to Purchase Stock Pursuant to Option Agreement, demanding that defendants purchase 28,800 shares of stock pursuant to the instrument dated February 28th,

1950, and tendered the stock. Defendants refused to buy the stock. On April 28, 1953, further written demand was made notifying defendants that they would be held responsible if they did not take the stock, and on May 20, 1953, plaintiffs notified defendants that they would hold them responsible.

The certificates of stock are physically located in Los Angeles County.

Defendants' motion for a change of venue to San Diego County was granted and plaintiffs appeal.

Defendants support the order for change of venue on the ground that being residents of San Diego County they were entitled to have the action tried there and plaintiffs have not brought themselves within any of the contract exceptions mentioned in section 395 of the Code of Civil Procedure;* that even under those exceptions, San Diego is the proper county because the contract, the basis of the action—the instrument dated February 28th, 1950—was made there. Plaintiffs assert that the document dated February 28th, 1950, was merely an offer and that the contract was not made until they accepted the offer by their demand that plaintiffs take the stock, which they say was made in Los Angeles County when the demand was deposited in the United States mail there, and hence the contract was made in Los Angeles County and it was a proper county for the trial of the action.

Section 395, *supra*, has been interpreted to mean that the opening clause, ''When a defendant has contracted to perform an obligation in a particular county'' has no particular significance as a limitation on the rest of the sentence. ▬ The section in effect says that ''. . . all actions arising on contract shall be tried in the county in which the defendant resides, or in which the contract was made, unless the defendant has contracted specially and in writing as to the county in which his obligation is to be performed, in which event such county is also a proper county for the trial of action.'' (*Armstrong*

*'' (1) In all other cases, except as in this section otherwise provided, and subject to the power of the court to transfer actions or proceedings as provided in this title, the county in which the defendants, or some of them, reside at the commencement of the action, is the proper county for the trial of the action. . . . When a defendant has contracted to perform an obligation in a particular county, either the county where such obligation is to be performed, or in which the contract in fact was entered into, or the county in which the defendant, or any such defendant, resides at the commencement of the action, shall be a proper county for the trial of an action founded on such obligation, and the county in which such obligation is incurred shall be deemed to be the county in which it is to be performed unless there is a special contract in writing to the contrary.'' (Code Civ. Proc., § 395.)

v. *Smith,* 49 Cal.App.2d 528, 532 [122 P.2d 115]; see also *De Campos* v. *State Comp. Ins. Fund,* 75 Cal.App.2d 13, 20-21 [170 P.2d 60].)

The obligation is incurred at the time the contract is made and the obligations under it arise and are incurred in the county in which it is made. Under the section the county where the contract is made is deemed to be the county where it is to be performed unless there is a special contract in writing to the contrary. The counties in which an action on the contract may be tried are two, that of defendant's residence or where the contract is made, unless there is a special contract in writing to the contrary. (*Armstrong* v. *Smith, supra,* 49 Cal.App.2d 528; *De Campos* v. *State Comp. Ins. Fund, supra,* 75 Cal.App.2d 13; *Pacific Bal Industries* v. *Northern Timber, Inc.,* 118 Cal.App.2d 815 [259 P.2d 465]; *Hale* v. *Bohannon,* 38 Cal.2d 458 [241 P.2d 4]; *Wilson* v. *Hoffman,* 81 Cal.App.2d 664 [184 P.2d 951]; *Yedor* v. *Ocean Acc. & Guar. Corp.,* 85 Cal.App.2d 698 [194 P.2d 95].) Thus it must be ascertained whether the contract, the basis of action, was made in Los Angeles County as it does not specially say it is to be performed there.

Plaintiffs allege in their complaint, as a basis for their action, that a contract was entered into in Los Angeles County when they ''accepted'' what is claimed was defendants' offer, and their affidavits are to the same effect. No answer denying such allegation has been filed but the affidavits of defendants show the transactions and writings involved and that the so-called acceptance was the writing relied on by plaintiffs in their complaint as the contract made in Los Angeles County. There is no dispute that the transactions were such as are heretofore set forth. It is not important, therefore, that there is no express denial of the allegation. Which paper is the contract is a question of law in the absence of extrinsic evidence on the question, assuming it would be admissible.

Assuming the February 28th, 1950, instrument did not constitute a binding contract for the sale of the stock because it was lacking in mutual consent and consideration in that plaintiffs did not promise to sell any stock or any number of shares to defendants, yet it could constitute an offer by the buyers (defendants) to buy such number of shares, not exceeding the stated amount, as the sellers (plaintiffs) desired to sell. Or, stated in another way, since plaintiffs had an option to sell an amount of stock at a stated price to defendants, the

defendants could not revoke the offer or option given to plaintiffs during the time specified because it was supported by special consideration, such consideration being presumed because of the writing,* the document dated February 28th, 1950, therefore constituted a binding option contract. ■ "In an option contract the optionor stipulates that for a specified or reasonable period he waives the right to revoke the offer." (*Warner Bros. Pictures, Inc.* v. *Brodel,* 31 Cal.2d 766, 772 [192 P.2d 949, 3 A.L.R.2d 691].) The questions still remain, however, when was the contract to which the option related (the contract for the sale of stock) made? If it was made when plaintiffs mailed their demand that defendants buy the stock, which was in Los Angeles County, is the contract, for the purpose of the venue statute, nevertheless the option contract which was entered into in San Diego County?

■ As to the first question, "If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to; but in other cases any reasonable and usual mode may be adopted." (Civ. Code, § 1582.) "Consent is deemed to be fully communicated between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer, in conformity to the last section." (Civ. Code, § 1583.) Those sections have been held applicable to acceptance or exercise of an option by an optionee under an option contract as well as to a revocable offer. (See *Canty* v. *Brown,* 11 Cal.App. 487 [105 P. 428]; *Shubert Theatrical Co.* v. *Rath,* 271 F. 827; contra Corbin on Contracts, § 264.)

■ In regard to the second question, this court in *Warner Bros. Pictures* v. *Brodel, Inc.,* 31 Cal.2d 766 [192 P.2d 949, 3 A.L.R.2d 691], was concerned with a question of whether a contract to perform services was made, when, within the terms of a statute dealing with approval of such contracts by the court, an option contract had been given to the proposed recipient of the services. We held that the contract to perform the services was made when the option contract was made although recognizing the general rule that where there is an option contract, there are two contracts, the option contract and the contract to which it relates. We said (p. 772): "Such a contract is clearly different from the contract to which the irrevocable offer of the optionor relates,

---

*"A written instrument is presumptive evidence of consideration." (Civ. Code, § 1614; see Code Civ. Proc., § 1963, subd. 39.)

for the optionee by parting with special consideration for the binding promise of the optionor refrains from binding himself with regard to the contract or conveyance to which the option relates. An option contract relating to the sale of land is therefore 'by no means a sale of property, but is a sale of a right to purchase' . . .: '. . . A contract conferring an option to purchase is . . . an irrevocable and continuing offer to sell, and conveys no interest in land to the optionee, but vests in him only a right in personam to buy at his election.' ▮ Nevertheless, while the optionee incurs no liability with regard to the contract or conveyance as to which he holds an option, *the optionor has irrevocably promised upon the exercise of the option to perform the contract* or make the conveyance upon the terms specified in his binding offer. . . . The optionee parts with consideration only because the optionor has incurred such liability. *The creation of the final contract requires no promise or other action by the optionor,* for the contract is completed by the acceptance of the irrevocable offer of the optionor by the optionee. *'The contract has already been made, as far as the optionor is concerned, but is subject to conditions which are removed by the acceptance.'* . . . ▮ Thus the option contract gives the optionee a right against the optionor for performance of the contract to which the option relates upon the exercise of the option, which the optionor cannot defeat by repudiating the option. . . . ▮ Since the optionor promises to perform the contract to which the option relates, subject to a condition at the discretion of the optionee, an option contract involves on the part of the optionor a unilateral promise to perform the obligations of the contract to which the option relates. . . . It follows that even though the option agreement differs from the contract of employment the granting of an option for a contract of employment by a prospective employee to a prospective employer involves a binding promise of the optionor to perform services upon specified terms and thus constitutes on his part a contract 'to perform or render services.' " (Emphasis added. See also *Seeburg* v. *El Royale Corp.,* 54 Cal.App.2d 1 [128 P.2d 362].) ▮ We can see no reason why this rule should not be applied in interpreting section 395 of the Code of Civil Procedure, *supra,* because it gives defendant the right to have the action tried in the county of his residence unless *he* has contracted to perform his obligation under the contract in another county. The exception is concerned with where *defendant* incurred the

obligation or entered into the contract. It is what his relation and responsibility under the contract are that is stressed in making the action triable elsewhere than in the county of his residence. In an option contract, even though the option has been exercised and suit is by the optionee, the defendant optionor is bound—the obligation was incurred, as far as he is concerned, when the option contract is made. In the instant case the court could reasonably conclude, for the purpose of determining venue, that the February 28th, 1950, instrument was a binding option contract inasmuch as it does not on its face show that there was no special consideration and the rebuttable presumption of consideration applies. Hence defendants would be bound— would have incurred the obligation on February 28th, 1950, when the instrument was executed. It having been executed in San Diego County, plaintiffs have failed to bring themselves within the exceptions in section 395. On the contrary the contract was made in San Diego County to which the action was transferred and that is the county in which it is deemed the obligation was to be performed, in addition to the fact that defendants have their residence there.

Since extrinsic evidence may be admissible to throw light on the basis of liability, if any, we express no opinion as to any situation which may develop from the evidence at the trial as to the matters above discussed, and we do not determine, or deem it necessary to determine here, whether the February 28th, 1950, instrument is a binding contract for the sale of the stock.

The order is affirmed.

Shenk, Acting C. J., Edmonds, J., Traynor, J., Spence, J., and Dooling, J. pro tem.,* concurred.

SCHAUER, J.—I concur in the judgment and generally in the opinion but for clarity of understanding deem it proper to point out that the option contract with which we are here concerned, grants an option to *sell* (with a concomitant obligation to purchase), as distinguished from an option to purchase (with a concomitant obligation to sell). No one, by the contract relied on, was required to *sell* but, conversely, the optionor was obligated, upon demand and tender by the optionee, to *purchase,* pay for and accept, the stock described at the price fixed, or be liable in damages for breach.