[S.F. No. 23065. In Bank. May 16, 1974.]

PALO ALTO TOWN & COUNTRY VILLAGE, INC.,
Plaintiff and Appellant, v.
BBTC COMPANY, Defendant and Respondent.

496

---

## COUNSEL

Mager, Matthews & Neider, Thomas F. Stack and James F. Matthews for Plaintiff and Appellant.

Nakashima & Boynton and Theodore K. Boynton for Defendant and Respondent.

## Opinion

**SULLIVAN, J.**—The sole issue confronting us in this case is whether, absent any provisions in the option contract to the contrary, a written notice by the optionee of his exercise of an option is effective upon its deposit in the mail or only upon its receipt by the optionor. As we explain *infra,* we have concluded that pursuant to sections 1582 and 1583 of the Civil Code,[1] the exercise of the option is effective upon mailing. We therefore affirm the judgment.

The facts of the case are briefly these. By written lease dated November 20, 1964, plaintiff leased to defendant, for the operation of a restaurant and bar, certain premises in a shopping center in San Jose for a five-year term commencing on January 1, 1965, and ending on December 31, 1969. The lease granted defendant two successive options to extend the term for a period of five years on each option. According to the options contained in paragraph 45 of the lease the "Lessee may, by giving not less than six months prior notice in writing to the Lessor, extend this lease for an additional five years" under specified terms and conditions, and after such extension "may extend this lease for a further five-year period . . . by giving Lessor not less than six months notice in writing prior to the end of the tenth year of the term of this lease."

On June 5, 1969, and more than six months prior to the end of the term of the lease, defendant prepared and signed a letter to plaintiff notifying the latter that it was exercising its option to extend the lease and deposited the same in the mail in a stamped envelope addressed to plaintiff. Defendant continued with its usual operation of the bar and restaurant and made various improvements on the premises in anticipation of the extended term of the lease. On February 13, 1970, a month and a half after the end of the initial term and eight and a half months after defendant's letter exercising the option, plaintiff notified defendant that the lease had expired for want of renewal and demanded surrender of the premises by March 31, 1970. Plaintiff claimed that it had never received defendant's letter. Defendant, on the other hand, claimed that it had properly exercised its option and refused to vacate.

Plaintiff thereupon commenced the present action for declaratory relief seeking a determination of its rights and duties under the lease and a declaration as to whether defendant properly exercised its option and whether the lease terminated on December 31, 1969. Defendant filed an answer

---

[1] Hereafter, unless otherwise indicated, all section references are to the Civil Code.

and cross-complaint, essentially alleging that it had by written notice to plaintiff exercised its option to extend the term and that in addition thereto, defendant's use, possession, improvement of and continued operations on the premises were such that plaintiff knew, or should have known, that defendant intended to extend its tenancy. In its cross-complaint, defendant sought damages for plaintiff's allegedly wrongful action in threatening defendant's peaceful possession and plaintiff's alleged interference with defendant's remodeling plans and negotiations for the sale of its business.

The trial court found and concluded that defendant on June 5, 1969, prepared, signed and mailed, properly stamped and adequately addressed, a letter to plaintiff unconditionally exercising its first renewal option in the lease; that defendant exercised the option, properly and validly in all respects; and that defendant at all material times was rightfully in possession of the premises under the lease. Judgment was entered accordingly.[2] This appeal followed.

█ It is well settled that when the provisions of an option contract prescribe the particular manner in which the option is to be exercised, they must be strictly followed. (*Flickinger* v. *Heck* (1921) 187 Cal. 111, 114 [200 P. 1045]; *Callisch* v. *Farnham* (1948) 83 Cal.App.2d 427, 430 [188 P.2d 775]; see generally 1 Witkin, Summary of Cal. Law (8th ed. 1973) p. 127.) However, when the option contract merely suggests, but does not positively require, a particular manner of communicating the exercise of the option, another means of communication is not precluded. (*Estate of Crossman* (1964) 231 Cal.App.2d 370, 372 [41 Cal.Rptr. 800].)

Accordingly, we must first ascertain if the lease requires that the exercise of the option be communicated to the lessor in a particular manner. An examination of that document discloses that paragraph 45 requires that notice of the exercise of the option be given "in writing" but the lease does not prescribe any particular manner of communicating such written notice to the lessor.

Plaintiff contends, however, without citation of any California authority,[3]

---

[2] In accordance with its findings of fact and conclusions of law, the court also ordered that plaintiff recover from defendant the sum of $4,000 as additional rental. The court, however, made no mention of defendant's cross-complaint for damages. Defendant has not appealed from the judgment and has apparently abandoned its damage claim.

[3] While some of the cases from other jurisdictions cited by plaintiff appear to support the proposition that the term "giving notice" in an option contract means, as a matter of contractual construction, "receiving notice," most appear to apply a substantive rule of law that unless the contract specifies to the contrary, exercise of an option is effective only upon receipt of notice by the optioner. (See, e.g., *Dynamics Corporation of America* v. *United States* (1968) 389 F.2d 424, 431 [182 Ct.Cl. 62].)

that the phrase "giving notice" in an option contract must be construed to mean that the notice is not effective until it is actually received by the optionor. Absent appropriate extrinsic evidence, to construe the term "giving notice" as imposing an absolute condition that the optionor receive the notice completely distorts the normal and accepted meaning of the phrase.[4]

In *Estate of Crossman, supra,* 231 Cal.App.2d 370, the court was called upon to determine whether an option to purchase real property had been effectively exercised under a provision in the option contract that any notice to be given by either party " 'shall be given in writing, either delivered personally or sent by prepaid registered mail.' " (*Id.* at p. 371.) Concluding that this provision in effect equated "given" with "sent," the court said "The agreement required that all notices be 'given'—not 'delivered' or 'received.' The same paragraph provides that notice be 'sent' by registered mail, thus equating 'sent' with 'given', and emphasizing the lack of requirement of actual delivery." (*Id.* at p. 373.)

In the case at bench paragraph 19 of the lease provides that all notices to be given *to* the lessee may be given in writing either personally or by mail.[5] Although this paragraph is silent as to notices given *by* the lessee and is therefore less inclusive than the provision in *Crossman,* it suggests a sufficient equating of "given" with "sent" to negative plaintiff's assertion that "giving", without more, means "receiving." We conclude, therefore, that paragraph 45 of the lease does not prescribe any absolute condition concerning the manner of communicating the exercise of the option to the optionor.

Since the lease does not prescribe the manner of communicating the exercise of the option to the optionor, "any reasonable and usual mode may be adopted." (§ 1582)[6] ██ ██ Clearly an option falls within the term "proposal" found in this section since "[a]n irrevocable option is a *contract* made for consideration, to keep an offer open for a prescribed

---

[4]See, e.g., Black's Law Dictionary (4th ed. 1951) page 819: "GIVE NOTICE. To communicate to another, in any proper or permissible legal manner, information or warning of an existing fact or state of facts or (more usually) of some intended future action."

[5]"All notices to be given *to* Lessee may be given in writing personally or by depositing the same in the United States mail, postage prepaid, and addressed to Lessee at the said premises, whether or not Lessee has departed from, abandoned or vacated the premises." (Italics added.)

[6]Section 1582 provides: "MODE OF COMMUNICATING ACCEPTANCE OF PROPOSAL. If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to; but in other cases any reasonable and usual mode may be adopted."

period." (1 Witkin, Summary of Cal. Law (8th ed. 1973) p. 124; see *Warner Bros. Pictures* v. *Brodel* (1948) 31 Cal.2d 766, 772 [192 P.2d 949]; *Flickinger* v. *Heck, supra,* 187 Cal. at p. 113; *Landberg* v. *Landberg* (1972) 24 Cal.App.3d 742, 751 [101 Cal.Rptr. 335]; Rest., Contracts, §§ 24, 47; Rest.2d Contracts (Tent. Drafts Nos. 1-7) §§ 24, 24a.) Thus in *Estate of Crossman, supra,* 231 Cal.App.2d 370 an option contract to purchase real property provided that any notice required to be given by either party, shall be in writing, either delivered personally or by prepaid registered mail. The court, holding section 1582 applicable, declared that the "broad inclusion of notices, regardless of importance, implies mere suggestion of a permissive method of communication," that "registered mail was not a prescribed requirement or an absolute condition," (231 Cal.App.2d at p. 373) and that exercise of the option by ordinary mail was effective as a "reasonable and usual mode" (§ 1582) of communicating acceptance of the proposal.

■ We therefore reject as devoid of merit, plaintiff's argument that the use of ordinary mail is not a reasonable and usual means of communicating acceptance in the instant case. Indeed, in the absence of any specified means in the lease, plaintiff's thesis against ordinary mail seems to us to be an astonishing one in the light of the common practice of today's world of business. It is even stranger in the light of paragraph 19 of the lease (see fn. 5, *ante*) which selects ordinary mail as a means of giving notice. We are satisfied that there is nothing in the circumstances of the case before us which militates against the conclusion that defendant's use of ordinary mail was a reasonable mode of communicating to plaintiff its exercise of the option to extend the lease.

We turn to the crucial issue in the case. Was defendant's exercise of its option to extend the lease effective upon its deposit in the mail of its written notice of acceptance or only upon the actual receipt of such notice by plaintiff?

The so-called "effective upon posting" rule[7] was codified in California in 1872 as section 1583 of the Civil Code: "WHEN COMMUNICATION DEEMED COMPLETE. Consent is deemed to be fully communicated between

---

[7]"It is well established that an acceptance of an offer to enter into a bilateral contract is effective and deemed communicated as soon as deposited in the regular course of mail if the offer was made by mail, or if the circumstances are such that an acceptance by mail would be authorized." (*State of California* v. *Agostini* (1956) 139 Cal.App.2d 909, 915 [294 P.2d 769]; *Ivey* v. *Kern County Land Co.* (1896) 115 Cal. 196, 200-201 [46 P. 926].)

the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer, in conformity to the last section." Although the question as to whether the exercise of an option is effective at the time written acceptance is deposited in the mail has never been squarely presented to this court, we have declared and a number of Courts of Appeal have held that option contracts are subject to the provisions of sections 1582 and 1583 and that an option is effectively exercised when written acceptance is deposited in the mail. (*Dawson* v. *Goff* (1954) 43 Cal.2d 310, 316 [273 P.2d 1];[8] *Estate of Crossman, supra,* 231 Cal.App. 2d 370, 373-374; *State of California* v. *Agostini* (1956) 139 Cal.App.2d 909, 915 [294 P.2d 769]; *Morello* v. *Growers Grape Prod. Assn.* (1947) 82 Cal.App.2d 365, 370-371 [186 P.2d 463]; *Canty* v. *Brown* (1909) 11 Cal.App. 487, 491 [105 P. 428]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) § 130, p. 127.) ■ We today reaffirm our observations in *Dawson* and hold that sections 1582 and 1583 apply to irrevocable options as well as to revocable offers and that absent any provisions in the option contract to the contrary, by virtue of section 1583 the exercise of an option becomes effective at the time written notice of acceptance is deposited in the mail.

Plaintiff, however, points out that the majority rule in other jurisdictions is that notice of exercise of an option is effective only upon receipt. Our attention is directed to *Dynamics Corporation of America* v. *United States, supra,* 389 F.2d 424, 431, where the court stated: "Turning now to the general rule governing exercise of an option, it is well settled that notice to exercise an option is effective only upon receipt." An additional example is presented in *Cities Service Oil Co.* v. *National Shawmut Bank* (1961) 342 Mass. 108 [172 N.E.2d 104], where the Supreme Court of Massachusetts declared: "It is at least the majority rule that notice to exercise an option is effective only upon its receipt by the party to be notified unless the parties otherwise agreed." (*Id.* at p. 105, fn. 1, see cases therein cited.) Finally it is noted that Professor Corbin supports such a rule: "If in an option contract the duty of the promisor is conditional on 'notice within 30 days', does this mean notice received or notice properly mailed? It is believed that in the absence of an expression of contrary intention, it should be held that the notice must be received. . . . The rule that an acceptance

---

[8]In *Dawson* we decided the sole issue of venue on the basis of the option contract itself. But assuming that it was not a binding contract, we went on to comment as to when the contract to which the option related was made. Although not actually necessary for our decision, we declared that sections 1582 and 1583 "have been held applicable to acceptance or exercise of an option by an optionee under an option contract as well as to a revocable offer. [Citations.]" (43 Cal.2d at p. 316.)

by post is operative on mailing was itself subjected to severe criticism; and, even though it may now be regarded as settled, it should not be extended to notice of acceptance in already binding option contracts." (1A Corbin on Contracts (1963 ed.) § 264, p. 521, fn. omitted; accord, Rest.2d Contracts (Tent. Drafts Nos. 1-7) § 64(f), p. 134.)

Arguing that section 1583 is inapplicable to option contracts since an option, properly analyzed, is not a "proposal" as used in the section and that we are free of any restraint of stare decisis, plaintiff urges us to apply the above so-called majority rule. We decline to do so. As we have explained, the "effective on posting" rule rests solidly on California statutory and decisional law. An analysis of the legal theory of option contracts to the end of determining whether an optionee is a "party accepting a proposal" and whether the exercise of the option is an "acceptance" from which "[c]onsent is deemed to be fully communicated" (§ 1583; and see §§ 1550, 1565, 1580 and 1581), satisfies us that our decision in this respect is a sound one.

An option, as a matter of legal theory, is considered to have a dual nature: on the one hand it is an irrevocable offer, which upon acceptance ripens into a bilateral contract, and on the other hand, it is a unilateral contract which binds the optionor to perform an underlying agreement upon the optionee's performance of a condition precedent. Professor Corbin explains the option as follows: "[The option] is a binding unilateral contract, since it is a promise exchanged for a sufficient cash consideration. It is also commonly called an offer . . . . This usage is not at all objectionable, if we realize that an offered promise may also be a binding promise. It certainly creates a power in B to be exercised . . . by giving notice of consent . . . . And on the giving of such notice within the time limit, the legal result is almost identical with that of the acceptance of an ordinary revocable offer . . . . It is a 'binding' promise, because a consideration was paid for it; it is an 'offer', because it invites a second and different exchange of equivalents. [¶] . . . O's [optionor's] promise is from the very beginning a binding contract, his duty to convey being conditional on notice by B within the stated time. The sending of such a notice by B is not merely the acceptance of an offer; it is also the performance of a condition precedent to O's duty of immediate performance." (1A Corbin on Contracts (1963 ed.) § 264, pp. 508-509, fn. omitted.)

This court in its exhaustive analysis of an option in *Warner Bros. Pictures* v. *Brodel, supra,* 31 Cal.2d 766, 772-773, explicitly recognized the dual aspect of an option, referring to it sometimes as an irrevocable offer

which is completed by the acceptance of the optionee and sometimes as a binding contractual promise to perform the underlying contract subject to the condition precedent of acceptance by the optionee. Which aspect of an option is emphasized depends upon which party's duties are under consideration. From the point of view of the optionor's duty it is binding upon the making of the option contract. "[T]he optionor has irrevocably promised upon the exercise of the option to perform the contract or make the conveyance upon the terms specified in his binding offer. . . . The creation of the final contract requires no promise or other action by the optionor, for the contract is completed by the acceptance of the irrevocable offer of the optionor by the optionee. 'The contract has already been made, as far as the optionor is concerned, but is subject to conditions which are removed by the acceptance.' (*Seeburg* v. *El Royale Corp.* [1942] 54 Cal. App.2d 1, 4 . . . .)" (*Warner Bros. Pictures* v. *Brodel, supra,* 31 Cal.2d 766, 772-773; *Dawson* v. *Goff, supra,* 43 Cal.2d 310, 316-318; *Caras* v. *Parker* (1957) 149 Cal.App.2d 621, 626-627 [309 P.2d 104].)

However, the optionee has no duty until, and unless, he accepts the irrevocable offer proposed to him by the optionor. As we observed in *Warner Bros. Pictures* v. *Brodel, supra,* 31 Cal.2d 766, 772, "In an option contract the optionor stipulates that for a specified or reasonable period he waives the right to revoke the offer. [Citations.] Such a contract is clearly different from the contract to which the irrevocable offer of the optionor relates, for the optionee by parting with special consideration for the binding promise of the optionor refrains from binding himself with regard to the contract or conveyance to which the option relates. . . . 'A contract conferring an option to purchase is . . . an irrevocable and continuing offer to sell, and conveys no interest in land to the optionee, but vests in him only a right in personam to buy at his election.' " Thus it has been held in California that an option to purchase real property "is by no means a sale of property, but is the sale of a right to purchase" (*Hicks* v. *Christeson* (1917) 174 Cal. 712, 716 [164 P. 395]) and on acceptance the option becomes a contract of sale binding on both parties. (*Smith* v. *Post* (1914) 167 Cal. 69, 74 [138 P. 705]; *Rheingans* v. *Smith* (1911) 161 Cal. 362, 367 [119 P. 494].)

■ Therefore from the viewpoint of the optionor, an option is a binding *contract subject to the performance of a condition precedent by the optionee.* From the viewpoint of the optionee, an option is an irrevocable offer which the optionee can convert into a binding bilateral contract by acceptance of the offer. Where the issue presented in a case focused upon

the optionor's obligation, the former analysis prevailed, so that in *Dawson* it was held that, as to the optionor, the contract was made upon the signing of the option contract and therefore venue in a suit to enforce the option lay where the option contract was made and not where the option was exercised. However, where the issue focused upon the optionee's action the latter analysis prevailed, as in *Crossman* where the court held that acceptance of an option was effective upon posting pursuant to section 1583.

█ Viewing the exercise of an option as an acceptance of an irrevocable offer, or in other words from the optionee's viewpoint under the preceding analysis, we think it is clear that the notice of the exercise of an option falls within the language of section 1583. The optionee is a "party accepting a proposal," namely the irrevocable offer; the notice of exercise is an "acceptance" of that offer and signifies the optionee's "consent" to be bound according to the terms of the bilateral contract created by the acceptance.

As plaintiff points out, it is true that if the exercise of the option is viewed as the performance of a condition precedent to the optionor's existent contractual duty, or in other words from the optionor's viewpoint under the preceding analysis, the language of section 1583 is not so apt, since a contractual duty is not a "proposal," and performance is not a "consent." Indeed Professor Corbin chooses to emphasize the theoretical possibility of viewing the notice of the exercise of an option in this aspect so as to thwart the extension of the "effective upon posting" rule, which he views with disfavor.[9]

█ In California, however, the "effective upon posting" rule has received legislative sanction and is the declared policy of this state. We must effectuate this policy in all cases reasonably included within the scope and language of the statute promoting this policy. As previously explained, when the notice of exercise of the option is viewed as an acceptance of an irrevocable offer, such notice is clearly covered by section 1583.

To recapitulate, we hold first, that since pursuant to section 1582 the lease prescribed no condition concerning the communication to the optionor of the exercise of the option except that the notice be in writing, notice of

---

[9]"It is believed that, in the absence of an expression of contrary intention, it should be held that the notice must be received. As above explained, the notice is in one aspect a notice of acceptance of an offer; but in another aspect it is a condition of the promisor's already existing contractual duty. . . . The rule that an acceptance by post is operative on mailing was itself subjected to severe criticism; and, even though it may now be regarded as settled, it should not be extended to notice of acceptance in already binding option contracts." (1A Corbin on Contracts (1963 ed.) § 264, p. 521, fn. omitted.)

acceptance by ordinary mail was a reasonable mode of communication; and second, that pursuant to section 1583 defendant's exercise of the option became effective when notice of acceptance was deposited in the mail.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Clark, J., concurred.