[No. B034295. Second Dist., Div. Five. Jan. 18, 1990.]

JAMES GIBBS et al., Plaintiffs and Appellants, v.
AMERICAN SAVINGS & LOAN ASSOCIATION, Defendant and
Respondent.

**COUNSEL**

James Gibbs and Barbara Gibbs, in pro. per., for Plaintiffs and Appellants.

Gronemeier, Barker & Huerta, Dale L. Gronemeier and Brenda J. Penny for Defendant and Respondent.

<hr>

### OPINION

**LUCAS, P. J.**—James and Barbara Gibbs appeal from judgment against them and in favor of American Savings & Loan Association (American Savings) in their action to enforce a purported contract for the sale of real property. We affirm.

### FACTS

In August 1984, James and Barbara Gibbs (the Gibbses) submitted an offer for $180,000 to American Savings to purchase a house in Woodland Hills which American Savings had taken back through foreclosure. American Savings, through its employee, Dorothy Folkman, agreed that the Gibbs could move into the subject property and rent it until the close of escrow. No action was taken on this offer.

On March 27, 1985, pursuant to a request by Ms. Folkman, the Gibbs submitted a new offer because American Savings could not find their original offer. The purchase price was again $180,000. On the morning of June 6, 1985, the Gibbses received a counteroffer from American Savings containing several additional terms and conditions, but with no mention of purchase price. According to Barbara Gibbs, she immediately drove to her husband's jobsite where she and her husband signed this counteroffer. She drove to her office, typed an envelope with a certified mail tag, placed the counter-offer in the envelope, and before 10 o'clock that morning, she handed it to the mail clerk at her office, instructing him to mail it for her.

At approximately 11 a.m. that same morning, Barbara Gibbs had a telephone conversation with Dorothy Folkman in which Folkman said the counteroffer was in error, since American Savings had intended to increase the sales price to $198,000. Folkman also advised the Gibbses that because of this error, the counteroffer was revoked.

American Savings took the position that no contract had been formed. The Gibbses insisted that they had accepted the counteroffer before it was revoked and that a contract thus existed. The Gibbses brought the within

action for damages, specific performance, breach of contract and declaratory relief. After trial, the court found that Barbara Gibbs did not place the acceptance of the counteroffer in the course of transmission when she gave it to the mail clerk in her office on June 6, 1985; thus there was no acceptance on that date. The postmark on the envelope was June 7, 1985. Dorothy Folkman's oral revocation of the counteroffer on June 6, 1985, preceded the Gibbses' acceptance of that counteroffer on June 7 and therefore no contract for sale of the property was ever formed. The Gibbses appeal from the judgment thereafter entered.

## DISCUSSION

■ In a case such as this, where there is no request for a statement of decision, "it must be presumed that every fact essential to the judgment was proved and found by the court." (*Philbrick* v. *Huff* (1976) 60 Cal.App.3d 633, 650 [131 Cal.Rptr. 733].) Review by the appellate court is limited to a determination as to whether there is any evidence, contradicted or uncontradicted, to support the judgment. (*Boccato* v. *City of Hermosa Beach* (1984) 158 Cal.App.3d 804, 808 [204 Cal.Rptr. 727].)

■ In accordance with these well-established rules of appellate review, we find substantial evidence supports the trial court's judgment. Barbara Gibbs testified that she received the counteroffer from American Savings at about 8:45 or 9 a.m. on June 6, 1985. She and her husband signed the counteroffer at 9:39 a.m. that day. She then drove about one mile to her office, prepared an envelope and certified mail receipt, and gave the ready-to-mail, signed counteroffer to the mail clerk in her office for mailing. This purportedly occurred before 10 a.m. on June 6.

Barbara Gibbs further testified that the clerk brought the mail to the Woodland Hills Post Office and returned with her receipt by 10:15 a.m. on June 6. However, the certified mail receipt was not produced at trial, and the envelope in which the signed counteroffer was mailed to American Savings was postmarked June 7, 1985, not June 6. According to the Domestic Mail Manual of the United States Postal Service, section 144.471, the date shown in the meter postmark of any type of mail must be the actual date of deposit. Section 144.534 of the manual provides that metered mail bearing the wrong date of mailing shall be run through a canceling machine or otherwise postmarked to show the proper date. The postmarked envelope constitutes substantial evidence that the acceptance was mailed on June 7, not June 6.

█ Civil Code section 1583 provides: "Consent is deemed to be fully communicated between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer, . . ." This rule has long been interpreted to require that the acceptance be placed out of the control of the accepting party in order to be considered "in the course of transmission." (*Ivey* v. *Kern County Land Co.* (1896) 115 Cal. 196, 201 [46 P. 926].) Typically, this is found when the acceptance is delivered to the post office. (*Morello* v. *Growers Grape Prod. Assn.* (1947) 82 Cal.App.2d 365, 370-371 [186 P.2d 463].) California's " 'effective upon posting' " rule, as codified in section 1583, thus holds that an acceptance of an offer is effective and deemed communicated upon its deposit in the mail. (*Palo Alto Town & Country Village, Inc.* v. *BBTC Company* (1974) 11 Cal.3d 494, 500-501 [113 Cal.Rptr. 705, 521 P.2d 1097].)

█ The postmark on the counteroffer in the case before us shows such deposit occurred on June 7, 1985, not on June 6. The counteroffer was not placed in the course of transmission beyond the control of the offeree when Barbara Gibbs gave it to the mail clerk in her office with instructions to deliver it to the post office. It was placed in the course of transmission within the meaning of Civil Code section 1583 when it was deposited with the United States Postal Service on June 7, 1985.

It is basic contract law that an offer may be revoked any time prior to acceptance. (Civ. Code, § 1586.) Both Barbara Gibbs and Dorothy Folkman from American Savings testified that they spoke together on the telephone on the morning of June 6, 1985. During that call, Folkman became aware of American Savings' error in failing to include the $198,000 purchase price in the counteroffer, advised Barbara Gibbs of the error and stated that American Savings was revoking the counteroffer. Inasmuch as the counteroffer was revoked on June 6, prior to the Gibbses' acceptance, no contract was formed.

A similar result was reached in the Florida case of *Kendel* v. *Pontius* (Fla. 1971) 244 So.2d 543, 544. In *Kendel,* the buyers delivered their signed acceptance to their attorney who was to mail it to the seller. Before the attorney mailed the signed acceptance to the seller, the seller revoked the offer. The court held delivery to the buyers' attorney did not constitute posting. No contract was formed because the seller's revocation preceded the mailing of the acceptance.

We find no reason to depart from this well-reasoned law.

## DISPOSITION

The judgment is affirmed.

Ashby, J., and Turner, J., concurred.