[No. G018485. Fourth Dist., Div. Three. Feb. 23, 1999.]

11382 BEACH PARTNERSHIP et al., Plaintiffs, Cross-defendants and Appellants, v.
JACOB LIBAW et al., Defendants, Cross-complainants and Appellants.

214

## COUNSEL

Morrison & Foerster, Seth M. Hufstedler and John Sobieski for Plaintiffs, Cross-defendants and Appellants.

Tuttle & Taylor, Mark A. Borenstein and Malissia R. Lennox for Defendants, Cross-complainants and Appellants.

## OPINION

**SONENSHINE, Acting P. J.**—Tenant 11382 Beach Partnership[1] (Beach) appeals from the judgment quieting title in favor of landlord Jacob Libaw.[2] Libaw cross-appeals, contending the trial court erred in failing to award

---

[1]Other cross-defendants are: Alpha Beta Company, the original tenant; American Stores Company, which guaranteed Alpha Beta Company's obligations; and David Gold, a general partner of 11382 Beach Partnership.

[2]The defendants (hereafter collectively designated Libaw) are: Jacob Libaw, an individual; Frances Libaw, an individual; Jacob and Frances Libaw, husband and wife; Arnold Skovron, an individual; Flora Skovron, an individual; Arnold and Flora Skovron, husband and wife; S. D. Libaw, an individual; Evan Libaw, as trustee of the E. J. Libaw Family Trust, and as cotrustee of the Patrice Libaw Trust; Shawn Libaw, as cotrustee of the S. D. and J. B. Libaw Family Trust, and as cotrustee of the Patrice Libaw Family Trust; and Josephine Libaw, as cotrustee of the S. D. Libaw and J. B. Libaw Family Trust. The cross-complainants are: Jacob Libaw, an individual; E. J. Libaw, as trustee of the E. J. Libaw Family Trust; S. D. Libaw and

damages. Libaw also appeals from an attorney fees and costs award, complaining it was too low. We affirm the portion of the judgment quieting title in Libaw and the attorney fees and costs award. We reverse and remand the portion of the judgment denying Libaw damages.

## I

Libaw leased commercial premises to Beach. The written lease provided the term expired April 30, 1996, but Beach had the option to extend for six successive five-year periods. Either party could cancel the lease if a fire destroyed the premises within two years before the lease expired.

A fire destroyed the premises on September 2, 1994. Beach immediately exercised its first five-year option. Two weeks later, Libaw canceled the lease and claimed it was entitled to all of Beach's fire insurance proceeds.

Beach paid its October rent, but Libaw returned the check, threatening legal action to recover possession of the premises if Beach did not vacate. In response, Beach filed the underlying complaint for declaratory relief, specific performance, reformation, and damages arising out of its inability to rebuild and resume business. Libaw's cross-complaint sought quiet title and breach of contract. It asked for damages for Beach's delay in delivering the premises and its failure to forward insurance proceeds.

The trial court found in favor of Libaw, holding the cancellation provision prevailed over Beach's option to extend and Libaw was entitled to the fire insurance proceeds. However, the trial court denied Libaw damages arising from its delayed possession. It also denied Beach's new trial motion. Libaw requested $131,995.70 in fees and $25,252.67 in costs. The trial court awarded $85,000 in fees and $8,138.97 in costs.

## II

### LEASE PROVISIONS

Paragraph 30 of the lease gives the tenant six successive options to extend, each for a period of five years. Paragraph 15(B) provides in pertinent part, "If, during the last twenty-four (24) months of this term there shall be a total destruction or partial destruction which cannot be rebuilt within thirty (30) working days, either party shall have the right to cancel and terminate this Lease within thirty (30) days of the happening thereof, by serving written

---

J. B. Libaw, as cotrustees of the S. D. and J. B. Libaw Family Trust; and E. J. Libaw and S. D. Libaw, as cotrustees of the Patrice Libaw Trust.

notice upon the other. . . ." Beach argues paragraph 30 applies, not paragraph 15(B).[3] For reasons we will explain, we disagree.

### Relation Back

■ Beach maintains once it exercised its option, the lease period converted from 20 to 25 years. This, it claims, rendered the premises destruction provision inapt because the fire occurred more than two years before the end of the twenty-five-year term.[4] Beach misreads the relevant provisions.

*At the time the fire occurred*, less than two years remained on the lease. Thus, pursuant to paragraph 15(B), either party could cancel the lease within 30 days, if the improvements could not be rebuilt within 30 working days. Such was the case here and paragraph 30 was, therefore, inapt.

Beach cites numerous cases to support its position, but none permits a party to cut off another's existing contractual rights.[5] In fact, *In re Marriage of Joaquin* (1987) 193 Cal.App.3d 1529 [239 Cal.Rptr. 175], a case upon

---

[3]Beach also asserts, "The landlords . . . are seeking to enforce a duty of immediate performance by compelling the tenant to turn over the insurance proceeds and to vacate the property as of September 19, 1994, or pay damages for refusing to do so. The landlords therefore had the burden of proof on all of the issues that were essential to their termination claim, and that meant that they had the burden of proof on the issue of contract interpretation, because a party that seeks to recover on a contract has to prove the terms of the contract. [Citations.]" This argument was raised for the first time in Beach's reply brief and Beach has failed to explain why it was not raised before. "We do not entertain issues raised for the first time in a reply brief, in the absence of a showing of good cause why such issues were not raised in the opening brief." (*Scott* v. *CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 322 [44 Cal.Rptr.2d 902].) Moreover, Beach failed to timely file its reply brief. (Cal. Rules of Court, rule 16(a).) In any event, as we will explain, Libaw's and the trial court's interpretation of the lease is correct.

[4]Beach also argues paragraph 30 prevails over paragraph 15(B). But this is just another version of the same argument. As we explain, the trial court was correct in finding paragraph 15(B) was specific to the situation. (Civ. Code, § 3534.) All further statutory references are to the Civil Code unless otherwise indicated.

In the alternative, Beach contends the prevailing party is the first to exercise its option, whether pursuant to paragraph 30 or 15(B). Under this theory, the tenant's exercise of its paragraph 30 option results in the landlord's loss of its paragraph 15(B) 30-day right to cancel. This construction, however, renders the paragraph 15(B) 30-day cancellation right meaningless.

[5]Other cases Beach cites are: *Palo Alto Town & Country Village, Inc.* v. *BBTC Company* (1974) 11 Cal.3d 494 [113 Cal.Rptr. 705, 521 P.2d 1097] (notice of exercise of option effective on deposit in mail rather than on receipt); *Dawson* v. *Goff* (1954) 43 Cal.2d 310 [273 P.2d 1] (venue determined by location of execution of option contract, not location where demand is exercised); *Smith* v. *Bangham* (1909) 156 Cal. 359 [104 P. 689] (buyer of property under option contract takes title free of homestead declaration recorded after grant of option given); *Claremont Terrace Homeowners' Assn.* v. *United States* (1983) 146 Cal.App.3d 398 [194 Cal.Rptr. 216] (buyer of property under option contract takes title free of federal tax lien recorded after grant of option given); *Rollins* v. *Stokes* (1981) 123 Cal.App.3d 701 [176

which Beach relies heavily, is not particularly helpful to it. In *Joaquin,* the landlord leased property to a tenant, with an option to extend. The tenant married, and thereafter exercised his option. After the tenant and his wife separated, the wife asserted the leasehold was a community property asset because the husband had exercised the option during marriage. The court disagreed, explaining the exercise of the option related back to the date of the original lease. (*Id.* at p. 1534.) His exercise of the option did not change the property from separate to community. (*Ibid.*) Beach's reliance on *Joaquin* is misplaced because there the court addressed the effect of an exercise of option on the marital property rights of a nonparty to the lease. Here, in contrast, the issue is whether the tenant's exercise of option cuts off the rights of the landlord.

### Subordination

Relying on section 1652, Beach argues paragraph 15(B) must be subordinated because it is repugnant to the lease's general intent. Beach views the intent as permitting "the tenant the use of the property for up to 50 years and the opportunity to exploit any increases in the value of that use, while providing the landlord[] with the security of a long term source of rent."

Beach is correct to a point. Section 1652 does provide a repugnant clause "must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clause[], subordinate to the general intent and purpose of the whole contract." However, nothing about the trial court's interpretation is repugnant to the lease's general intent.[6]

### Avoidance of Forfeiture

Beach correctly states a lease should be construed to avoid a forfeiture. However, it fails to establish a forfeiture here.[7]

*C. M. Staub Shoe Co.* v. *Byrne* (1915) 169 Cal. 122 [145 P. 1032] is instructive. There our Supreme Court considered a lease provision for the

---

Cal.Rptr. 835] (when landlord grants right of first refusal to tenant, and later grants option to purchase to broker, tenant's right of first refusal prevails over broker's option); and *Anthony* v. *Enzler* (1976) 61 Cal.App.3d 872 [132 Cal.Rptr. 553] (agent entitled to commission when option, granted during listing period, later exercised).

[6]Beach also argues paragraph 15(B) must be subordinated because, under section 1650, "[p]articular clauses of a contract are subordinate to its general intent." This is essentially the same as Beach's section 1652 argument. However, paragraph 15(B), a simple contingency clause, is not inconsistent with the general intent of the lease. Beach cites no case construing section 1650 as requiring the subordination of a termination contingency clause in a long-term lease.

[7]Beach cites a number of inapt cases. (See *Holiday Inns of America* v. *Knight* (1969) 70 Cal.2d 327 [74 Cal.Rptr. 722, 450 P.2d 42] [failure of optionee to make timely option payment]; *McNeese* v. *Wood* (1928) 204 Cal. 280 [267 P. 877] [default due to sublessee's

termination of a lease if fire damaged the premises and more than 60 days were required for repair. After a fire occurred, the tenant desired to remain in possession, claiming the property could be repaired within 60 days. The landlord disagreed and seized the property. In holding for the landlord, the court explained, "[T]he . . . clause makes entirely reasonable provision for the various contingencies that might result in case of fire or other injury to the building or premises. There is here no basis for applying the rule of strict interpretation against conditions involving forfeiture. [Citation.] The clause terminating the lease in certain contingencies does not declare a forfeiture. It fixes events, having no relation to any act or default of the parties, upon which it is agreed that the lease shall end." (*Id.* at p. 129.)

### III

#### DAMAGES

■ The trial court adjudged the lease terminated as of September 19, 1994. However, it denied Libaw damages for Beach's delay in surrendering the premises, noting the evidence of the damages was speculative.[8] The trial court was wrong.

A landlord is entitled to value of the use of the property for the period of wrongful occupation, and the costs of recovering possession. (§ 3334, subd. (a); see also *Bank of America* v. *O'Shields* (1954) 128 Cal.App.2d 212, 217-218 [275 P.2d 153].) The "value of the use of the property shall be the greater of the reasonable rental value of that property or the benefits obtained by the person wrongfully occupying the property by reason of that wrongful occupation." (§ 3334, subd. (b).)

There is substantial evidence of rental value in the record: (1) The original monthly rental was $5,833 plus a percentage; (2) current subtenant rental

bookmaking operation on premises]; *Jenkins* v. *Tuneup Masters* (1987) 190 Cal.App.3d 1 [235 Cal.Rptr. 214] [tenant's lease extension valid even though notice lost in mail]; *Rowe* v. *Wells Fargo Realty Services, Inc.* (1985) 166 Cal.App.3d 310 [212 Cal.Rptr. 374] [landlord's allegation of tenant waste and violation of law insufficient to permit forfeiture]; *Hawley* v. *Orange County Flood etc. Dist.* (1963) 211 Cal.App.2d 708 [27 Cal.Rptr. 478] [unreasonable delay by party seeking to avoid payment of damages]; and *Flagg* v. *Andrew Williams Stores, Inc.* (1954) 127 Cal.App.2d 165 [273 P.2d 294] [tenant's interest not forfeited on bankruptcy of tenant's assignor].)

[8]In reaching this conclusion, the trial court stated it considered: (1) there was no evidence whether Libaw intended to rebuild, and if so, what would be rebuilt; (2) nine months had passed since the fire; (3) it would take four to five months to rebuild even a 99 Cent Store; and (4) the structure would probably be vacant for six months once rebuilt, and there might be a six-month rental concession for the new tenant. The court also considered the rental conditions, property values and economic situations in the vicinity.

payments were $21,947; (3) Libaw's expert testified the fair monthly rental value was between $21,000 and $22,500; and (4) Beach's expert testified it was $14,850 to $16,500. In sum, the court had before it the rental amounts being paid by both Beach and its subtenant as well as the opinions of two experts who both testified the property had rental value. It is within the discretion of the trial court to weigh the evidence, including the divergent opinions of the experts, and determine the appropriate rental value. It is an abuse of discretion, however, in face of the substantial rental value evidence presented, to conclude the property had no rental value. The issue is remanded to the trial court for a determination of damages.

## IV

### ATTORNEY FEES AND COSTS

Paragraph 25 of the lease provides if either party brings an action to enforce the lease, "the prevailing party shall be entitled to receive . . . such amount as the court may adjudge to be reasonable attorneys' fees for the services rendered . . . ." Libaw filed a memorandum of costs claiming $8,138.97 in Code of Civil Procedure section 1032 costs.[9] It also filed a section 1717 motion, requesting $131,995.70 in attorney fees and $17,113.70 in costs.[10] The trial court awarded it $85,000 in fees and $8,138.97 in costs.

Libaw argues the trial court erred in failing to award the full amount of the fees and costs requested. However, Libaw appealed only from the fees award. An " 'appeal from a distinct and independent part of a judgment does not bring up the other parts for review in the appellate court . . . .' [Citation.]" (*Gonzales* v. *R. J. Novick Constr. Co.* (1978) 20 Cal.3d 798, 805 [144 Cal.Rptr. 408, 575 P.2d 1190].) Accordingly, we consider only the fees award.

Libaw explained its counsel spent 834.2 hours handling the case, which was not particularly complex, but according to Libaw, involved

---

[9] Code of Civil Procedure section 1032, subdivision (b) provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Code of Civil Procedure section 1033.5, in turn, defines costs which are allowable under section 1032.

[10] The additional litigation costs requested were: $10,718.80 for expert witness expenses; $116 for secretarial overtime; $1,786.42 for photocopying; $161.26 for telephone charges; $380 for faxes; $1,198.92 for messenger and attorney services; $238.11 for Federal Express and extraordinary postage expenses; $1,353.10 for computer research expenses; and $1,161.09 for other costs.

" '[i]mportant and unusual questions of law . . .' [citation], necessitating expert discovery and testimony." Libaw added, "[T]he litigation was hard-fought at every turn. Even seemingly obvious and easily determinable facts, such as whether the building was destroyed before Beach exercised the renewal option and whether the building could be rebuilt within 30 working days, were disputed by Beach's trial counsel, requiring the preparation of proof by . . . Libaw's attorneys, until Beach finally stipulated to these facts during trial. [Citation.] Beach's tenacity and aggressiveness before, during, and after trial necessarily increased the cost of this litigation. [¶] Thus, the figure demanded for attorneys' fees, $131,995.70, is reasonable considering the contentiousness of the litigation, the novelty of the case, and the work involved. . . ."[11]

The trial court nonetheless exercised its discretion to award less than the amount of attorney fees requested. (*Erich* v. *Granoff* (1980) 109 Cal.App.3d 920, 931 [167 Cal.Rptr. 538].) The trial only took two days. Moreover, the trial judge remarked the parties were "ready to put in more evidence than was really necessary . . . [and tried to make the litigation] more complicated than it really had to be." The time consumed and the complexity of the litigation are proper factors for the court to consider in assessing the reasonableness of attorney fees. (*Id.* at pp. 931-932.) Furthermore, as this court has stated previously, the " ' "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' [Citation.]" (*Montgomery* v. *Bio-Med Specialties, Inc.* (1986) 183 Cal.App.3d 1292, 1298 [228 Cal.Rptr. 709].) Inasmuch as we are not convinced the attorney fees award was clearly wrong, we do not disturb it on appeal.[12]

## V

The portion of the judgment quieting title in Libaw as of September 19, 1994, and awarding the insurance proceeds to Libaw is affirmed. The portion of the judgment denying damages to Libaw is reversed and remanded for

---

[11]Libaw describes the work involved as: preparing and drafting summary judgment motion papers, meeting and considering discovery disputes, taking and defending seven depositions, handling repeated settlement conferences, preparing and responding to extensive written discovery, interviewing third party witnesses, obtaining third party documents through formal and often contested means, and preparing for and attending the trial.

[12]The $131,995.70 fees request includes fees for time spent on tax reassessment issues. These services do not relate to the enforcement of the lease and are not chargeable to Beach. The trial court's reduction is more than sufficient to exclude all fees with respect to these services.

further proceedings consistent with this opinion. The attorney fees and costs award is affirmed. Libaw shall recover its costs on appeal.

Rylaarsdam, J., and Bedsworth, J., concurred.

A petition for a rehearing was denied March 15, 1999, and the petition of plaintiffs, cross-defendants and appellants for review by the Supreme Court was denied May 26, 1999.