**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRIAN A. BUCKLEY,
                    *Petitioner-Appellee,*

                v.

C. A. TERHUNE, Director of the
CDC,
                    *Respondent-Appellant.*

No. 03-55045

D.C. No.
CV-00-02435-JSL

OPINION

Appeal from the United States District Court
for the Central District of California
J. Spencer Letts, District Judge, Presiding

Argued and Submitted
January 9, 2004—Pasadena, California

Filed January 25, 2005

Before: Stephen S. Trott, Johnnie B. Rawlinson, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Trott;
Dissent by Judge Bea

**COUNSEL**

Noah P. Hill, Deputy Attorney General, Los Angeles, California, for the respondent-appellant.

Allen Bloom, San Diego, California, for the petitioner-appellee.

---

**OPINION**

TROTT, Circuit Judge:

C.A. Terhune, Director of the California Department of Corrections, ("State") appeals the district court's grant of Brian Buckley's petition for a writ of habeas corpus. The State's appeal is timely, and we have jurisdiction under 28 U.S.C. § 2253. The district court did not afford the state court's determination of facts the appropriate level of deference. Accordingly, we reverse the judgment of the district court because it resulted from a misapplication of the strict standard of review mandated by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 ("AEDPA").[1]

**I**

On November 27, 1987, Buckley was charged in Ventura County, California with felony murder, robbery, and burglary. *See* CAL. PENAL CODE §§ 187(a), 190.2(a), 211, 459. On December 15, 1987, the prosecutor, Donald C. Glynn, wrote Buckley a letter offering a plea bargain. The proposal contemplated that Buckley would testify against suspects Curtis Fau-

---

[1]We note that the district court did not have the benefit in 2002 of the Supreme Court's guidance in *Lockyer v. Andrade*, 538 U.S. 63 (2003), or *Miller-El v. Cockrell*, 537 U.S. 322 (2003), when it rendered its decision, not to mention our opinion in *Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004).

ber and Christopher Caldwell as to three murders, but the agreement did not specify the sentence to be imposed should Buckley accept the offer. Attached to Glynn's letter was a document entitled "Felony Disposition Statement."

According to the Felony Disposition Statement, Buckley was to plead guilty to a violation of California Penal Code section 187 (murder) on Count 1, and the prosecutor was to recommend that the court declare the murder to be murder in the second degree and that the remaining counts be dismissed in the interests of justice. The agreement contained also the following relevant paragraphs, which Buckley initialed:

> F.   *CONSEQUENCES OF PLEA* (Defendant to initial)
>
> /BB/   My attorney has explained to me the direct and indirect consequences of this plea including the maximum possible sentence. I understand that the following consequences could result from my plea:
>
> /BB/   I could be sentenced to the state prison for a maximum possible term of *15* year(s).
>
> * * *
>
> /BB/   After I have served my prison term, I may be subject to a maximum parole period of *LIFE*[2] (*In re Carabes*, 144 Cal. App. 3d 927).

---

[2]When Buckley signed the Felony Disposition Statement, the "maximum parole period" was blank. It is uncontested, however, that Buckley was consistently informed that he could be subject to parole for life, and that the prosecutor filled in this space with the word "LIFE" at the change of plea hearing on January 4, 1988. Neither Buckley nor the state claim Buckley's parole period should be anything other than life.

At some point in time before Buckley entered his plea of guilty, the prosecutor added — and the prosecutor alone initialed — a *handwritten* paragraph to the Felony Disposition Statement that stated:

> /DCG/  At the time of sentencing the people will move the court to declare the murder to be murder in the second degree, **with a maximum term of 15 years to life**.

Neither Buckley nor his defense attorney, Willard Wiksell, initialed this paragraph. On December 17, 1987, Buckley signed the prosecutor's December 15, 1987 letter and initialed and signed the Felony Disposition Statement. At the change of plea hearing on January 4, 1988, the prosecutor engaged Buckley in the following colloquy:

> Q: And has your attorney explained all of the consequences of your plea to this charge?
>
> A: Yes.
>
> Q: Do you understand that for second degree murder you could be sentenced to state prison **for a maximum possible term of 15 years**?
>
> A: Yes.
>
> Q: And do you understand that after serving a prison term you'll be subject to a parole period — I'm sorry, your Honor, does the Court know the parole period for second degree murder? I didn't enter that in the document.
>
> The Court: Yes, it's — **the possibility is parole for life**.

Q:  (By Mr. Glynn:) All right. I've entered this into the document.[3] You could be subject to a parole period of life. And you could also be ordered to pay a fine of not less than a hundred dollars nor more than $10,000. Do you understand that?

A:  Yes.

* * *

Q:  Now as I stated before and it's also contained in this Felony Disposition form, that at the time of sentencing the people will ask the Court to declare the murder to be murder in the second degree with **a maximum term of 15 years to life**. And the People's reason for entering into that plea agreement are contained in this document that's attached to the Felony Disposition Statement [the December 15, 1987 letter].

I'd like to go into the terms of this agreement with you. In order — or as your part of the agreement you will agree to cooperate in the trials against Curtis Fauber and Christopher Cogwell [sic], and that you will testify in the Fauber case at all proceedings regarding the murder of Thomas Urell, David Church, and Jack Dowdy, and testify truthfully regarding whatever you know about those murders. Do you understand that to be the situation?

A:  Yes.

Q:  I'm showing you the Felony Disposition form, this yellow form here, that has some initials

---

[3]At this point, it appears Glynn filled in the blank with the uncontested word "LIFE."

> B.B. against a number of the paragraphs. . . .
> And at the end of the form I see the date
> December 17, 1987 and your signature. Did you
> sign this document on that date?
>
> A: Yes.
>
> Q: And did you sign this document because you
> read each of the paragraphs that you have ini-
> tialed and you understand what's contained in
> these paragraphs?
>
> A: Yes.

(emphasis added). The prosecutor then asked Buckley if he agreed to testify as a witness for the State against two other defendants, and Buckley responded, "Yes."

The prosecutor's letter and the Felony Disposition Statement were entered into evidence as the written plea bargain agreement. The judge then accepted Buckley's guilty plea to Count 1 on the charge of murder. Sentencing was suspended until after Buckley testified at the trials of Fauber and Caldwell.

At some point on January 4, 1988, defense attorney Wiksell signed the December 15, 1987 letter, and both he and prosecutor Glynn signed the Felony Disposition Statement, which Buckley had already initialed and signed three weeks earlier.

At the sentencing hearing, Judge McGrath began by saying, "It would be my intention to follow the recommendation. That's just an indication to counsel and is subject to change if counsel changes my mind during the argument or evidence." The trial court ordered the probation report filed. The prosecutor moved the court to declare Count 1 to be murder in the second degree and to dismiss Counts 2 and 3. The court granted both motions. The prosecutor then stated for the

record that Buckley had complied with all the terms of the plea agreement: "He has been a cooperative witness in all of the phases of the Fauber trial and he has testified at the preliminary hearing in the case against Christopher Caldwell." After a discussion about Buckley's concerns for his safety, the possible options for where to house him, and the nature of the crime, the court sentenced Buckley:

> **The Court does impose the term prescribed by law as 15 years to life.** The Defendant is granted presentence credits by the Court of 110 days actual time, 55 days good time-work time, a total of 165 days.
>
> The Defendant is ordered to pay a restitution fine of $10,000 to the State Restitution Fund. The Court finds and the Court requests that the clerk show on the Abstract and Minutes that the Defendant's life is in danger in prison because of the testimony that he gave against his co-defendant in this case . . . and that the Court requests that the Department of Corrections give Defendant protective custody status in state prison and seriously consider him as a candidate for out-of-state placement.
>
> * * *
>
> This specific offense carries a parole term for the rest of your natural life once you would be released from the state prison facility.
>
> If you should violate a term or condition of parole, you would be placed back into prison for up to one year for any single violation.

(emphasis added). The judge then asked Buckley, "Do you understand that?" Buckley responded, "Yes." No objection was made on his behalf to the sentence as imposed.

Eight years later, Buckley filed a petition for writ of habeas corpus in the Superior Court of California, claiming that the State had breached the plea agreement because Buckley had agreed only to a determinate 15-year sentence, not the indeterminate sentence of 15 years to life the court imposed. At the conclusion of the proceedings occasioned by that petition, the Superior Court found "that with the exception of one statement in the negotiated disposition statement, and a reference at the time of the taking of the plea on January 4, 1988, the records demonstrate that the advisement was that the sentence would be 15 years to life as provided by law, and that the petitioner well knew this." The court continued:

> Any ambiguity concerning petitioner's understanding . . . is put to rest by petitioner's own statement . . . during petitioner's testimony at the trial of Curtis Fauber that he understood his term of imprisonment would be 15 years to life. This is underscored by the judge's comments at the time the sentence was pronounced on March 1, 1988 . . . .

In addition, the Superior Court took judicial notice of its own records in Buckley's case wherein Buckley indicated, just 33 days after he was sentenced, in his own hand, and without quarrel, that his sentence was "15 years to life, plea bargain." The California Court of Appeal and the California Supreme Court both summarily denied Buckley's successive petitions.

Dissatisfied with this result, Buckley petitioned for a writ of habeas corpus in the United States District Court for the Central District of California. The court referred the case to a magistrate judge and granted an evidentiary hearing. Following the hearing, the court adopted the magistrate's report, making findings of fact and ultimately holding that "to the extent that the state court's ruling is properly characterized as a factual finding, it is an incorrect and unreasonable one, and petitioner has met his burden of demonstrating by clear and convincing evidence that it is erroneous." *Buckley v. Terhune*,

266 F. Supp. 2d 1124, 1141 (C.D. Cal. 2002) (citation omitted). The court opined that "[t]he Superior Court's findings and conclusion rest on a flawed foundation. It lacked the benefit of an evidentiary hearing during which it could have developed the record regarding any discussions or advice which occurred off the record." *Id.* After considering evidence, much of which without excuse Buckley did not present to the state court, the district court ultimately found that Buckley understood he would receive a 15-year determinate sentence and granted the petition, ordering his release from custody "upon the expiration of [his] 15 year sentence." *Id.* at 1143-44.

## II

### A.

We review the district court's decision to grant a 28 U.S.C. § 2254 habeas petition *de novo*, as we do issues of law — including the proper application of the law to the facts. *Nunes v. Mueller*, 350 F.3d 1045, 1051 (9th Cir. 2003). We review findings of fact made by the district court for clear error. *Id.*

**[1]** Under the AEDPA, § 2254 habeas petitions "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding*." 28 U.S.C. §§ 2254(d)(1), (2) (emphasis added). Additionally, § 2254(e)(1) states: "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## B.

**[2]** When reviewing state convictions, the principles of comity and federalism embodied in the relevant sections of the controlling federal habeas statute militate against substituting our judgment for that of the state courts. As the Supreme Court explained in *Williams v. Taylor*, 529 U.S. 362 (2000), § 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Id.* at 412. As we recently stated, "[A] federal court may not second-guess a state court's factfinding process unless, after review of the state-court record, it determines that the state court was *not merely wrong, but actually unreasonable*." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added); *Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000) (same standard of unreasonableness applies under subsections (d)(1) and (d)(2)).

**[3]** In *Maddox*, this circuit established a two-part analysis under §§ 2254(d)(2) and (e)(1). First, federal courts must undertake an "intrinsic review" of the state court's factfinding under the "unreasonable determination" clause of § 2254(d)(2). *Id.* at 1000. The intrinsic review requires federal courts to examine the state court's factfinding process, not its findings. We noted that "intrinsic challenges to state-court findings pursuant to the 'unreasonable determination' standard come in several flavors, each presenting its own peculiar set of considerations." *Id.* at 1000-01 (listing, e.g.: "where the state court should have made a finding of fact but neglected to do so[;] . . . where the state court does make factual findings, but does so under a misapprehension as to the correct legal standard[;] . . . and, where the fact-finding process itself is defective").

**[4]** "Once the state court's factfinding process survives this intrinsic review — or in those cases where petitioner does not

raise an intrinsic challenge to the facts as found by the state court — the state court's findings are dressed in a presumption of correctness," as laid out in 28 U.S.C. § 2254(e)(1). *Id.* at 1000. That presumption

> helps steel them against any challenge based on extrinsic evidence, *i.e.*, evidence presented for the first time in federal court. AEDPA spells out what this presumption means: State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error.

*Id.* (citation omitted).

### III

In this appeal, we are presented with two competing versions of the facts — those found by the state court, on one hand, and those found by the federal court, on the other. According to the Ventura County Superior Court, Buckley "well knew" that he pleaded guilty in exchange for an indeterminate sentence of 15 years to life, but according to the United States District Court, the Superior Court's finding "is an incorrect and unreasonable one." *Buckley*, 266 F. Supp. 2d at 1141. The district court concluded that Buckley reasonably "understood that he was receiving a sentence of no more than 15 years." *Id.* at 1141.

As the competing findings demonstrate, the record regarding the terms of the plea agreement in this case is subject to dispute. Nevertheless, the issue we must first decide is not which of these versions of the facts is correct, but whether the district court correctly concluded that the Superior Court's version is an unreasonable one. *See* 28 U.S.C. §§ 2254(d)(2), (e)(1). We focus on the decision of the Superior Court as the "last reasoned decision," because the California Court of

Appeal and Supreme Court summarily denied Buckley's successive habeas petitions without comment. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).[4]

## A.

Following the construct established in *Maddox*, first we undertake an "intrinsic review" of the state's factual finding process. In order to do so with the precision required by the statute and our controlling precedents, we ordered the parties to provide us with the complete record of Buckley's state habeas proceedings in the Ventura County Superior Court — which they did. We asked them also to give us their views on the impact of *Maddox* in this case — which they have also done.

What we find in the Superior Court record is as follows:

1. Petitioner Buckley's petition for a writ of habeas corpus dated March 28, 1996.

2. Five supporting evidentiary exhibits to his petition:

    a. The felony complaint filed against the petitioner. (Ex.#1)

    b. The plea agreement negotiated in return for his testimony against Curtis Fauber and Christopher A. Caldwell. (Ex.#2)

---

[4]Buckley asserts that the *Ylst* doctrine would not apply here because he filed a new habeas petition at each state level as allowed under California law, rather than appeals from the Superior Court's decision, and he presented a new piece of evidence to the Court of Appeal and Supreme Court. We find this distinction immaterial on the facts of this case because Buckley asserted the same errors in his successive petitions, and the new evidence presented by Buckley to the Court of Appeal and Supreme Court was irrelevant to the formation of the plea agreement.

    c.   The Superior Court felony disposition statement memorializing Buckley's plea of guilty and all the required waivers. (Ex.#3)

    d.   A reporter's transcript dated January 4, 1988, of the entry of the plea of guilty to second degree murder. (Ex.#4)

    e.   A reporter's transcript dated March 1, 1987, of Buckley's sentence (without objection) to "the term prescribed by law as 15 years to life." (Ex.#5)

3.   Respondent district attorney Bradbury's return to Buckley's petition dated July 12, 1996, supplemented by an addendum dated July 15, 1996.

4.   A supporting evidentiary declaration by the prosecutor, Donald C. Glynn.

5.   Exhibit A to the Glynn declaration consisting of a reporter's transcript dated January 7, 1988, of Buckley's guilt-phase testimony against Curtis Fauber indicating that his anticipated sentence was "15 years to life."

6.   A Superior Court order dated July 22, 1996, directing Buckley to file a traverse, or an answer, to the prosecutor's return, and ordering a specific response to the "factual allegations set forth in paragraph 12, paragraph 13, and paragraph 14, wherein it appears that petitioner was well aware at the time of the entry of his plea to second degree murder that the punishment was 15 years to life."

7.   Buckley's responsive traverse dated August 21, 1996.

8.   The Superior Court's order dated September 10, 1996, denying the petition.

9. Court Exhibit #1 to its September 10, 1996, order consisting of Buckley's petition for writ of appeal "from his conviction dated April 3, 1988, and indicating in his own hand that his sentence was "15 years to life, plea bargain."

**[5]** What we do not find in the record — or in Buckley's counsel's response to our order to produce the record — is any indication that Buckley asked for or was denied either: (1) an opportunity to develop or to offer additional evidence; (2) an opportunity orally to argue in support of his petition; or (3) an evidentiary hearing in open court on any of the issues. What we deduce instead is that Buckley was content to have the claims in his petition decided upon the extensive written evidentiary record and argument submitted by both sides, which is exactly what transpired. The final document in Buckley's response to our order is a declaration of mailing to the parties of the Superior Court's order denying writ of habeas corpus, dated September 10, 1996. Conspicuous by its absence is any request by Buckley for reconsideration.

Here, we take note of what appears to be an omission of important information in Buckley's evidentiary submission to the Superior Court. Buckley's evidentiary Exhibit #4 is a copy of a transcript of Buckley's arraignment on Monday, January 4, 1988, and the entry of his guilty plea. The pages of the reporter's transcript itself are consecutively numbered 1-13. However, page 12 was omitted from this Exhibit and does not appear in the parties' recent submissions to this court. Why is this important? Because, as pointed out by the prosecutor in 1996 in his return, the missing page 12 of Buckley's Exhibit #4 quotes Buckley's counsel's description of Buckley's sentence during his arraignment and in his client's presence as "15 to life." Here is the exchange, which Buckley apparently did not include in his exhibit to the Superior Court:

The Court: I'm leaving this department [at] the end of January. If you gentlemen like and the defendant

requests, I'll keep the case for sentencing, or you can keep this case here. . . . But whatever you want to do is fine with me.

[Buckley's counsel responded:] Why don't you — normally wouldn't make any difference because **it's a second degree murder and you can only sentence him to 15 to life**.

(emphasis added).

**[6]** From the foregoing, we conclude that petitioner had a full, fair, and complete opportunity to present *evidence* to the state courts — of which he took full advantage. He had an evidentiary hearing, albeit on the written record. In his petition to the Superior Court, he included five evidentiary exhibits. The Superior Court judge referred to the evidence on the record before him, asked for and received a response to certain factual assertions and submissions by the respondent, and then made a reasoned decision "in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Thus, the state court's factfinding process easily survives an intrinsic review. We find no defect whatsoever in the process invoked by Buckley and employed by the Superior Court.

**[7]** The error made here by the district court was in believing — on the basis of evidence *not* submitted to the Superior Court — that because the Superior Court did not conduct an open evidentiary hearing and solicit additional input, its process was flawed and its findings did not need to be honored in federal court. To reiterate, the magistrate judge's report and recommendation says, "[t]he Superior Court's findings and conclusions rest on a flawed foundation. It lacked the benefit of an evidentiary hearing during which it could have developed the record regarding any discussions or advice which occurred off the record." *Buckley*, 266 F. Supp. 2d at 1141. He continued, "to the extent that the state court's ruling is properly characterized as a factual finding, it is an incorrect

and unreasonable one, and petitioner has met his burden of demonstrating by clear and convincing evidence that it is erroneous." *Id.* (citation omitted).

**[8]** In *Mendiola v. Schomig*, 224 F.3d 589, 592-93 (7th Cir. 2000), the Seventh Circuit noted the differences between pre-AEDPA § 2254(d) and the current § 2254(e)(1). *Id.* The latter "does not require findings to be based on evidentiary hearings." *Id.* Under this rationale, the magistrate in this case erred by determining that because the California Superior Court's finding was not based on a separate evidentiary hearing it is not entitled to deference under the AEDPA. As the *Mendiola* court noted, "[i]f a state court's findings rest on thin air, the petitioner will have little difficulty satisfying the standards for relief under § 2254. But if the state court's finding is supported by the record, even though not by a 'hearing on the merits of the factual issue', then it is presumed to be correct." *Id.* (quoting 28 U.S.C. § 2254(d) (1994) (pre-AEDPA)). We agree with our sister circuit: we do not read either the AEDPA or *Maddox* as mandating an in-court evidentiary hearing under all circumstances. The question is whether the factfinding process was fatally defective. Moreover, petitioner challenged the state court's finding in his federal habeas petition on the basis that it was simply wrong, *not* on the basis that the factfinding process was intrinsically flawed.

We note here that all the "new" evidence petitioner brought to the district court's attention was not evidence that was unknown or unavailable to the petitioner in state court — to the contrary. In this respect, his federal presentation to the district court runs afoul of the requirement that before he can obtain federal habeas relief, he must have fairly presented his claims to the state court. As the Supreme Court said in *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992):

> It is hardly a good use of scarce judicial resources to duplicate factfinding in federal court merely because a petitioner has negligently failed to take

advantage of opportunities in state-court proceedings.

Furthermore, ensuring that full factual development of a claim takes place in state court channels the resolution of the claim to the most appropriate forum. The state court is the appropriate forum for resolution of factual issues in the first instance, and creating incentives for the deferral of factfinding to later federal-court proceedings can only degrade the accuracy and efficiency of judicial proceedings. This is fully consistent with, and gives meaning to, the requirement of exhaustion. . . . Exhaustion means more than notice. In requiring exhaustion of a federal claim in state court, Congress surely meant that exhaustion be serious and meaningful.

* * *

The purpose of exhaustion is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court. Comity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court.

*Id.* at 9-10.

In this connection, § 2254(e)(2) provides as follows:

If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless [petitioner] shows that —

(A)   the claim relies on —

(i)   a new rule of constitutional law . . . ; or

(ii)  a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [petitioner] guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

In *Williams v. Taylor*, 529 U.S. 420 (2000), the Supreme Court interpreted this statute as follows in connection with a petitioner's responsibility fully to develop the record in state court:

> For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met. Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings. Yet comity is not served by saying a prisoner "has failed to develop the factual basis of a claim" where he was unable to develop his claim in state court despite diligent effort. In that circumstance, an evidentiary hearing is not barred by § 2254(e)(2).

*Id.* at 437.

When the "stringent requirements" of § 2254(e)(2) are cast in terms of a petitioner's dispute with his sentence, and whether the facts underlying his claim would have been such that no reasonable factfinder could have found against him, we are persuaded that he fails to satisfy this test — as will become evident from our extrinsic review of the factfinding process. *See infra* Part III B. *See also Baja v. Ducharme*, 187 F.3d 1075, 1079 (9th Cir. 1999) (a petitioners indefensible failure in state court to advance evidence in support of his federal claim bars him pursuant to § 2254(e) from an evidentiary hearing in federal court).

**[9]** State courts cannot be expected, *sua sponte*, to order testimonial evidentiary hearings when they are not requested or when the need for such a hearing is not apparent from the material submitted. Where, as here, the state court considered all of the evidence submitted by the petitioner and did not refuse the petitioner the opportunity to develop those claims — indeed, the court solicited more factual input and argument — we cannot conclude that the decision "was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding*." 28 U.S.C. § 2254(d)(2) (emphasis added).

**B.**

**[10]** Having concluded that the state court employed a proper process in determining the facts, *Maddox* next instructs us to undertake an "extrinsic review" under 28 U.S.C. § 2254(e)(1) of the state's factfinding process. In this setting, the AEDPA "steels" the state court findings with a presumption of correctness. *Maddox*, 366 F.3d at 1000. "[The] presumption means: State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and con-

vincing proof that the state-court finding is in error." *Id.* (citation omitted).

**[11]** As noted above, contradictory statements regarding petitioner's sentence appear in the Superior Court record. Nonetheless, that record contains evidence and information sufficient to support the Superior Court's conclusion. As we have explained, during his testimony against Curtis Fauber, Buckley himself contemporaneously described his expected sentence, in return for his cooperation, to be the standard term of "15 years to life," as did his own attorney at the time of his plea. Moreover, Buckley repeated this understanding shortly after his sentence in his petition for writ of appeal: "15 years to life, plea bargain." Given this evidence, we find it impossible to say that the Superior Court's findings of fact as to Buckley's contemporaneous understanding and the nature of the plea bargain to amount to an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).

Petitioner relies heavily on the alleged failure of the Superior Court to consider Buckley's testimony during the *penalty* phase of his co-defendant's trial. When asked during that trial when he believed he would be *released* from prison, Buckley replied, "Seven and a half years." However, Buckley did not present this evidence to the Superior Court. Moreover, this evidence is contradicted by his testimony during the *guilt* phase of that trial, where he stated that he understood his sentence to be "15 years to life." Furthermore, his first statement does not conclusively determine that he understood he was facing a determinate 15-year sentence. As the State points out, then extant California law regarding application of good time credits to sentences of 15 years to life was unclear, so Buckley could have understood he would serve only half of the indeterminate sentence. *See In re Oluwa*, 207 Cal. App. 3d 439, 442 (1989) (holding that "persons serving sentences of 15 years to life for second degree murder are not eligible to receive the 1-for-1 custody credits . . . but only 1-for-2,"

which results in a minimum sentence of 10 years rather than 7-1/2 years).

At the federal evidentiary hearing, Buckley, his mother, his attorney Willard Wiksell, prosecutor Donald Glynn, and investigator Larry Troxel testified regarding Buckley's plea negotiation and agreement. Again, the various witnesses presented conflicting testimony. Wiksell, Buckley's trial counsel and a practiced defense attorney who had tried "hundreds" of criminal cases prior to representing Buckley, testified that he told his client he would receive the standard sentence for second-degree murder, 15 years to life. This testimony finds support in the missing page from Buckley's Exhibit #4, where Wiksell describes his client's sentence during his arraignment as "15 to life." [Evid. Hearing Tr. 129]. As related above, Buckley testified also that he thought he was getting the standard sentence. Troxel, who was not present during any part of the actual plea negotiation, testified that the prosecutor represented Buckley's sentence to him as a 15-year sentence. [Evid. Hearing Tr. 15-17]. Buckley's mother testified that she met with Glynn, who explained to her that Buckley would probably only serve seven and a half years. [Evid. Hearing Tr. 32]. She testified also that in a conversation in an elevator, Troxel, who had no authority to participate in any part of the plea bargain, told her Buckley was receiving a 15-year determinate sentence. [Evid. Hearing Tr. 33].

This contradictory testimony does not amount to "clear and convincing" evidence that the Superior Court's finding was in error. Here, we are faced with evidence that might support either conclusion. Buckley's evidence is anything but clear, and not at all convincing. In cases such as this, we "may not second-guess a state court's fact-finding process unless, after review of the state-court record, [we] determine[ ] that the state court was *not merely wrong, but actually unreasonable*." *Maddox*, 366 F.3d at 999 (citations omitted) (emphasis added). "To secure habeas relief, petitioner must demonstrate that a state court's finding of [fact] was incorrect by clear and

convincing evidence, 28 U.S.C. § 2254(e)(1), and that the corresponding factual determination was 'objectively unreasonable' in light of the record before the court." *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003).

**[12]** Of consequence in this analysis is the fact that we are examining a state court's construction of the terms of a plea agreement. The Supreme Court addressed this situation in *Ricketts v. Adamson*, 483 U.S. 1 (1987), a case that reversed our holding regarding the provisions of a state court plea agreement. In its opinion, the Court offered this authoritative guidance:

> [O]nce a state court has, within broad bounds of reasonableness, determined that a breach of a plea agreement results in certain consequences, a federal habeas court must independently assess the effect of those consequences on federal constitutional rights. This independent assessment, however, proceeds without second-guessing the finding of a breach and is not a license to substitute a federal interpretation of the terms of a plea agreement for a reasonable state interpretation.

> \* \* \*

> [T]he construction of the plea agreement and the concomitant obligations flowing therefore are, within broad bounds of reasonableness, matters of state law, and we will not disturb [the state court's] reasonable disposition of those issues.

*Id.* at 5 n.3. In fine, Buckley has not demonstrated that the Superior Court's factual determination was objectively unreasonable, and he has not carried his "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## CONCLUSION

**[13]** Because the state court's determination of the facts was not unreasonable under the AEDPA, we reverse the district court's decision granting Buckley's § 2254 habeas petition.

**REVERSED; PETITION DENIED.**

---

BEA, Circuit Judge, dissenting:

Were I simply to disagree with the weight to be given the evidence, or the conclusions drawn therefrom, I would not further encumber the Federal Reports by writing a dissent. It is because I see this case as being controlled by 28 U.S.C. § 2254(d)(1), whereas the majority apply section 2254(d)(2), that I respectfully dissent. When judges' criteria pass each other without acknowledgment, like ships on a dark night, at least one should blow a horn.

Next, were the relevant legal issues whether Buckley "understood" or "knew" or "believed" he was pleading to a "15 years to life" sentence rather than a "15 years maximum" sentence, I would agree with the majority. There is sufficient evidence in the record made before the Ventura County Superior Court on the habeas hearing so that its finding that Buckley "well knew" he was pleading to "15 years to life" was not "unreasonable." 28 U.S.C. § 2254(d)(2).[1]

But the proper focus of enquiry is not on section 2254(d)(2), but on section 2254(d)(1).[2] At the time of the state

---

[1]Similarly irrelevant is whether the district court should have held an evidentiary hearing. I quite agree with the majority: it was not necessary to develop the construction of the plea agreement.

[2]Under 28 U.S.C. § 2254(d)(1), a habeas petition should be granted where the state court opinion "resulted in a decision that was contrary to,

habeas proceeding, clearly established Federal law, as determined by the Supreme Court, made the interpretation and construction of a plea agreement a matter of state law. *Ricketts v. Adamson*, 483 U.S. 1, 5 n.3 (1987) (holding that "the construction of the plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law"). Under California law, plea agreements are governed by the rules of contract law. *People v. Toscano*, 20 Cal. Rptr. 3d 923, 926 (Cal. Ct. App. 2004) ("a plea agreement is interpreted according to the same rules as other contracts").

When the sentencing judge failed either to sentence Buckley according to the parties' intent as objectively manifested in the agreement or to give Buckley an opportunity to withdraw his plea, the sentence imposed violated Buckley's constitutional rights because it rendered his plea involuntary. The breach of a plea agreement by failing to properly advise a criminal defendant of his potential sentence is a violation of due process. *Santobello v. New York*, 404 U.S. 257, 262 (1971). Where a defendant is misled as to the consequences of his plea, it renders the plea involuntary. *Williams v. Taylor*, 529 U.S. 420, 431-33, 437-38 (2000).

By looking at the subjective understanding of one of the parties to interpret the plea agreement, rather than looking at the objective manifestation of the parties' intent as California law requires, the state court based its decision on irrelevant evidence and reached an irrelevant determination of fact. What a party to a contract "knew or did not know" is irrelevant where, as here, there are no claims of mistake, misrepresentation or fraud.

---

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Throughout the majority opinion there is no analysis of whether the state court decision violated clearly established federal law so as to fall within 28 U.S.C. § 2254(d)(1).

Rather, the proper analysis under California law is: (1) What were the terms of the plea bargain at the time the contract was formed? (2) Was there a valid modification of those terms? (3) Did the trial judge either (a) sentence the defendant in accordance with the terms of the plea bargain, or (b) advise the defendant that the judge would not do so and give the defendant an opportunity to withdraw his guilty plea?

When analyzed according to the applicable California contract law, the evidence shows that a contract was formed that specified a determinate prison term of 15 years with the possibility of life parole. Any attempted modification of that contract to change the prison term to "15 to life" was invalid for lack of new consideration.[3] However, Buckley was not sentenced according to the agreed upon terms in the plea bargain, nor was he given an opportunity to withdraw his guilty plea. Accordingly, I would affirm the district court's grant of habeas corpus, albeit not on the rationale used by the district court.

## I

We review the district court's decision to grant a 28 U.S.C. § 2254 habeas petition *de novo* as we do issues of law, including the proper application of the law to the facts. *Nunes v. Mueller*, 350 F.3d 1045, 1051 (9th Cir. 2003). We review findings of fact made by the district court for clear error. *Id.* "We may affirm the district court's decision on any ground supported by the record, even if it differs from the district court's rationale." *Id.*

## II

Under both federal and California law, "[p]lea agreements

---

[3]The phrase "15 to life" means an indeterminate prison term for a minimum of 15 years to a maximum of life, subject to an early release at the discretion of The Board of Prison Terms, California's parole board.

are contractual in nature and are measured by contract law standards." *United States v. De La Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993) (citation omitted). *See also People v. Toscano*, 20 Cal. Rptr. 3d at 926 (following Ninth Circuit law) ("a plea agreement is interpreted according to the same rules as other contracts"); *People v. Knox*, 20 Cal. Rptr. 3d 877, 880 (Cal. Ct. App. 2004) (in construing the terms of a plea agreement, courts should employ contract law standards and "should first look to the specific language of the agreement") (citation omitted). Federal law requires that the plea bargain agreement in this case be analyzed in terms of California contract law. *De La Fuente*, 8 F.3d at 1337; *see also*, *Ricketts*, 483 U.S. at 5 n.3.

The subjective understanding of one of the parties, no matter how accurately delved, is irrelevant to the formation of a contract, unless a mistake is alleged. 1 WITKIN SUM. OF CAL. LAW § 365 (9th ed. 1990). Rather, where ambiguities as to the parties' objectively manifested intent exist, California law is clear: the California Civil Code provisions for interpretation of contract ambiguities must be followed and must be followed in the order provided in the Civil Code. *Bank of the West v. Superior Court*, 833 P.2d 545, 551-52 (Cal. 1992).

A.   *Plain Meaning*

Under California contract law, one first looks at the plain meaning of the agreement. CAL. CIV. CODE § 1644 ("The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning."). Here, the written contract[4] has two conflicting terms in

---

[4]The plea offer letter dated December 15, 1987, together with the Felony Disposition Statement, constituted an offer which required acceptance in a form certain: Buckley was to initial certain required paragraphs, sign and date the offer. Once an offer is accepted in the form required, a contract exists. *See Palo Alto Town & Country Village, Inc. v. BBTC Co.*, 521 P.2d 1097, 1098-99 (Cal. 1974). True it is that the plea agreement is not

it. In one paragraph, it states: "I could be sentenced to the state prison for a maximum possible term of *15* years(s). . . . After I have served my prison term, I may be subject to a maximum parole period of *Life*." These paragraphs were initialed by Buckley. But another paragraph states: "At the time of sentencing the people will move the court to declare the murder to be murder in the second degree, with a maximum term of 15 years to life." This paragraph was handwritten, unlike all other portions of the Felony Disposition Statement, which were typewritten. It was initialed only by the prosecution, not by Buckley.[5]

Buckley submitted a declaration to the state court stating that at the time he accepted the offer by signing the plea agreement, this latter paragraph stating he could be sentenced to "15 years to life" was not in the plea agreement. However, his and his counsel's signatures appear at the end of the document, after the handwritten paragraph Buckley did not initial. And the prosecutor testified at the district court hearing, that it was his usual custom and practice to fill out all portions of the plea agreement before sending it to the defense attorney,

---

effective as a basis for sentencing unless and until accepted by the sentencing judge. *Toscano*, 20 Cal. Rptr. 3d at 926; *People v. Rhoden*, 75 Cal. App. 4th 1346, 1354 (1999). But once the terms of the contract are ascertained by rules of contract interpretation, and the plea agreement and plea are accepted by the sentencing judge, the sentence must be based on that agreement, regardless the prosecutor's wish to change the terms of the agreement. *Toscano*, 20 Cal. Rptr. 3d at 927. In addition, the verbal exchange on January 4, 1988, could not have constituted a modification to the agreement already formed on December 17, 1987, because the prosecutor did not offer, nor did Buckley bargain for or accept, any new consideration. *See* CAL. CIV. CODE § 1698.

[5]The majority asserts that this paragraph was added to the Felony Disposition Statement before Buckley pleaded guilty. All the record shows is that this paragraph was added at some point in time—but when it was added is unknown. What we do know is that neither Buckley nor his attorney initialed the paragraph, and Buckley agreed only that he had read each paragraph he initialed, not this added paragraph.

although he had no independent recollection of this plea agreement. If one were to assume that the prosecutor followed his usual practice in this case, a trier of fact could reasonably find there are directly conflicting provisions in the plea agreement. Thus, an ambiguity remains in the written contract.

## B.  *Reasonable Expectation of Promisee*

When an ambiguity remains in the wording of the contract after application of the plain meaning rule in section 1644, under *Bank of the West*, *supra*, the next step is to go to California Civil Code section 1649, which states: "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor [here, the prosecutor] believed, at the time of making it, that the promisee [here, Buckley] understood it." Now the evidence from the colloquy becomes relevant. At the change of plea hearing on January 4, 1988, the prosecutor, reading from the plea agreement, asked Buckley if he understood that he was to be sentenced to "a maximum possible term of 15 years" with the possibility of parole for life. Buckley responded: "Yes." Shortly thereafter, the prosecutor said: "Now *as I stated before [sic: the prosecutor had stated no such thing]* and it's also contained in this Felony Disposition form, that at the time of sentencing the people will ask the Court to declare the murder to be murder in the second degree with a maximum term of 15 years to life."[6] Here again, the terms conflicted.

---

[6]This exchange between the prosecutor and Buckley reminds one of another famous exchange:

"When *I* use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."

"The question is," said Alice, "whether you *can* make words mean so many different things."

"The question is," said Humpty Dumpty, "which is to be master—that's all."

Lewis Carroll, *Through the Looking Glass and What Alice Found There*, *in* THE ANNOTATED ALICE: THE DEFINITIVE EDITION 213 (Martin Gardner ed., Norton Publishers) (2000).

The prosecutor then asked Buckley if he agreed to testify as a witness for the state against two other defendants and Buckley responded: "Yes." Buckley's final answer in this exchange cannot reasonably be interpreted to mean that he was agreeing to a sentence of 15 years to life because he was never directly asked that question.[7] Hence, the ambiguity still remains.

## C.   *Contra Proferentem (Against the Drafter)*

If the ambiguity is not resolved by the analysis set forth in sections 1644 and 1649, then *Bank of the West* tells us one must look to California Civil Code section 1654, which states: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." *See also Bank of the West*, 833 P.2d at 551-52; *Toscano*, 20 Cal. Rptr. 3d at 926 ("ambiguities are construed in favor of the defendant"). Here, finally, there is no ambiguity.

It is undisputed that the prosecutor drafted both the December 15, 1987 letter and the Felony Disposition Statement comprising the plea agreement. Accordingly, under section 1654, the plea agreement must be construed in Buckley's favor as providing for a determinate sentence of 15 years maximum, with life parole.

By failing to analyze the plea agreement under California contract law, the state superior court failed to apply clearly established federal law as set forth by the Supreme Court. 28 U.S.C. § 2254(d)(1); *Ricketts v. Adamson*, 483 U.S. at 5 n.3.

---

[7]From the exchange between the prosecutor and Buckley, it is clear that Buckley agreed to cooperate in the trials of two other defendants. The prosecutor's representations and his *voir dire* of Buckley in the presence of the court were not for the purpose of forming a contract, but to assure the court Buckley understood the terms of the agreement as required under California law. CAL. PENAL CODE § 1192.5.

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).[8]

Here, because the plea agreement is ambiguous, it must be construed in favor of Buckley and against the prosecution. Therefore, even on the state court record alone, Buckley's interpretation must prevail, and his sentence is a determinate sentence of 15 years, with the possibility of life parole.

In support of his interpretation, Buckley's declaration submitted with his habeas petition showed that he thought the terms "15 years with a parole period of life" and "15 years to life" meant the same thing since the prosecutor himself used

---

[8]Another, but not essential, way of looking at this is based on *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004). Once the superior court focused on what Buckley "understood, knew or believed" (his subjective knowledge) rather than the objective manifestation of the parties' intent as documented in their written offer and acceptance, the superior court's fact-finding process was not only wrong, it was unreasonable. 28 U.S.C. § 2254(d)(2). *Taylor v. Maddox* did not limit our review of the state court's fact-finding process to whether the state court needed to hold a hearing. The state court's fact-finding process is also unreasonable under 28 U.S.C. § 2254(d)(2):

> where the state court does make factual findings, but does so under a misapprehension as to the correct legal standard. *See, e.g.*, *Caliendo v. Warden*, 2004 WL 720362, at *6 (9th Cir. Apr. 5, 2004); *Fernandez v. Roe*, 286 F.3d 1073, 1077 (9th Cir. 2002); *Wade v. Terhune*, 202 F.3d 1190, 1197 (9th Cir. 2000). Obviously, where the state court's legal error infects the fact-finding process, the resulting factual determination will be unreasonable and no presumption of correctness [under 28 U.S.C. § 2254(e)(1)] can attach to it.

*Taylor*, 366 F.3d at 1001. That is exactly what happened here. The state court—and the majority—seek to interpret the terms of the plea agreement by one party's subjective understanding, rather than the objective manifestation of the parties' intent. Accordingly, the state court's construction of the plea agreement is not entitled to the special deference under 28 U.S.C. § 2254(e)(1) that the majority opinion gives to it.

the terms interchangeably. The district court found Buckley's testimony credible because he had not initialed the handwritten paragraph and the prosecutor did not have a clear memory of the events.

Although superfluous under our analysis because neither mistake nor modification are properly before us, the district court found Buckley's belief that his maximum possible sentence was a determinate term of fifteen years was reasonable under the circumstances. The district court also found that Buckley had no reason to suspect that the prosecutor had attempted to change the terms of the plea agreement until a probation officer finally informed Buckley that the term "15 to life" meant he could serve a life sentence in prison. This finding is not clearly erroneous. *See Nunes*, 350 F.3d at 1052.

Once the prosecutor realized he had made a mistake, he had several opportunities to remedy it. Upon realizing that he had said "a maximum possible term of 15 years" when he meant to say "15 to life," the prosecutor could have corrected his mistake and made certain that Buckley understood the difference before Buckley's guilty plea was accepted and before Buckley testified, at some risk to his life, at the trials of Fauber and Caldwell. Having failed to correct his mistake in time, and having taken advantage of Buckley's reliance on the original terms of the contract by obtaining the benefit of Buckley's testimony at the other trials, the state is now estopped from arguing that the plea agreement should not be enforced. *See People v. Collins*, 45 Cal. App. 4th 849, 864-865 (1996). When a guilty plea is entered in exchange for specified benefits, both parties must abide by the terms of the agreement. *Id.* at 862-63; *Santobello v. New York*, 404 U.S. at 262 (1971).

### III

The constitutional violation occurred when the sentencing judge failed to either sentence Buckley in accordance with the terms of his plea agreement, or give Buckley an opportunity

to withdraw his plea. The judge was not free simply to alter the terms of the plea agreement, even unwittingly.

At the March 1, 1988 sentencing hearing, the trial judge said he intended to follow the recommendation in the plea bargain. The prosecutor stated for the record that Buckley had complied with all the terms of the plea agreement: "He has been a cooperative witness in all of the phases of the Fauber trial and he has testified at the preliminary hearing in the case against Christopher Caldwell." After a discussion about Buckley's concerns for his safety, the possible options for where to house him, and the nature of the crime, the court sentenced Buckley to "15 years to life" with "a parole term for the rest of your natural life once you would be released from the state prison facility." No objection was made to the sentence as imposed. Although the sentencing judge indicated an intent to sentence Buckley in accordance with the plea agreement, Buckley's sentence of fifteen years to life does not correctly reflect the terms of the plea agreement.

California law gives the defendant the ability to opt out of the plea bargain if the court does not approve of the recommended sentence. *See* CAL. PENAL CODE § 1192.5; *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003). This does not render the terms of the plea bargain any less enforceable. *Brown*, 337 F.3d at 1160-61.

When accepting a guilty plea the trial court must assure that the defendant understands the consequences of his plea. *See* CAL. PENAL CODE § 1192.5.[9] Prior to sentencing, the judge

---

[9]"Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea. If the court approves the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for hearing on the appli-

should have made certain that Buckley either agreed to the indeterminate term, or given Buckley the opportunity to withdraw his guilty plea. The judge should have clarified the terms of the plea agreement when the prosecutor first stated that Buckley could be sentenced to a "maximum possible term of 15 years," with parole for life, and later said Buckley could be sentenced to a "maximum term of 15 years to life." *See Brown v. Poole*, 337 F.3d at 1161 (holding that a prisoner was entitled to specifically enforce an oral plea agreement for seven and a half years, even though she would not ordinarily be eligible for parole for ten years under the law). Even though no one appeared to notice this switch in the terms of the contract, "[t]hat the breach of agreement was inadvertent does not lessen its impact." *Santobello*, 404 U.S. at 262.

The failure properly to advise a criminal defendant of his potential sentence is a violation of due process which renders his plea involuntary. *Williams*, 529 U.S. at 431-33, 437-38; *Santobello*, 404 U.S. at 262.

## IV

Finally, the state argues that even if this court finds that the plea agreement was breached, the appropriate remedy is to remand the case back to state court so that Buckley can change his plea to not guilty and stand trial for the offense. Although such a remedy might commend itself where a similar error is discovered early in the proceedings, Buckley has already testified for the state in the Fauber and Caldwell trials. He has nothing with which to bargain for a new plea. Most importantly, he has already served more than 15 years.

---

cation for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in that case, the defendant shall be permitted to withdraw his or her plea if he or she desires to do so. The court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea." CAL. PENAL CODE § 1192.5.

Accordingly, the only remedy that would give Buckley the benefit of his bargain is specific performance. *See Brown*, 337 F.3d at 1161-62 (where Brown had already served the agreed upon sentence, "Brown has met the terms of the agreed-upon bargain, and paid in a coin that the state cannot refund. Rescission of the contract is impossible under such circumstances; Brown cannot conceivably be returned to the status quo ante. That leaves specific performance as the only viable remedy."). Accordingly, I dissent, and would affirm the grant of habeas, to allow Buckley to remain at liberty.