Filed 3/2/21 P. v. Montgomery CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>JASON LEONARD MONTGOMERY,<br><br>   Defendant and Appellant. | B301224<br><br>Los Angeles County<br>Super. Ct. No. BA477272 |

APPEAL from a judgment of the Superior Court of Los Angeles County, James R. Dabney, Judge. Affirmed.

Sarah M. Javaheri, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Christopher G. Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Jason Leonard Montgomery appeals from his conviction for assaulting and seriously injuring his uncle. He contends that he was denied the right to present a defense when the court excluded three defense witnesses; that the prosecutor committed prejudicial misconduct by disparaging defense counsel and misstating the burden of proof; and that the trial court did not understand its discretion to strike his five-year serious-felony prior. We affirm.

## PROCEDURAL BACKGROUND

By information filed May 22, 2019, defendant was charged with one count of assault with force likely to cause great bodily injury (Pen. Code,[1] § 245, subd. (a)(4); count 1) and one count of battery with serious bodily injury (§ 243, subd. (d); count 2). As to count 1, the information alleged that defendant had personally inflicted great bodily injury on someone other than an accomplice (§ 12022.7, subd. (a)). The information also alleged that defendant had previously been convicted of a felony that constituted both a strike prior (§§ 1170.12, 667, subds. (b)–(j)) and a serious-felony prior (§ 667, subd. (a)). Defendant pled not guilty and denied the allegations.

After a bifurcated jury trial at which he testified in his own defense, defendant was found guilty as charged. Defendant waived a jury trial on the prior-conviction allegations. After a bench trial, the court found the allegations true beyond a reasonable doubt.

---

[1] All undesignated statutory references are to the Penal Code.

The court granted defendant's motion to strike his prior conviction under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*), and sentenced him to an aggregate term of 10 years. The court selected count 1 as the base term and imposed the low term of two years, plus three years for the great-bodily-injury enhancement (§ 12022.7, subd. (a)) and five years for the serious-felony prior (§ 667, subd. (a)), to run consecutively. The court stayed count 2 under section 654.

Defendant filed a timely notice of appeal.

## FACTUAL BACKGROUND

### 1.  Defendant's Fight with Leonard

On January 13, 2019, April Hurd visited Willie Leonard's house. They were sitting on a couch in the living room with Leonard's sister Renee when defendant, Leonard's nephew, walked in. Defendant was upset and yelling about the family home. He said he was "going to buy you motherfuckers out." Looking at Leonard, he said, "We'll get rid of you, and we don't have to worry."

Defendant clenched his fists and punched Leonard in the face six times. Then he grabbed Leonard by the ankles, dragged him out to the sidewalk, kicked him twice in the ribs, and left.

Hurd and Renee both called 911. Renee wanted defendant removed from the home, as he was "jumping on my, my uncle" and had "dumped the food out." Meanwhile, Hurd said defendant was "going crazy" and "tearing the house up." She said defendant "drug [*sic*] [Leonard] down the stairs" and "beat his uncle to death." Leonard was currently "on the sidewalk with a gash in his head … bleeding to death." Leonard's forehead was "split open" and "gushing" blood.

Los Angeles Police Department Officer Kevin Ruiz responded to the scene, where he found Leonard lying on the sidewalk in a puddle of blood. Ruiz noted that Leonard had several injuries, including a cut forehead, bruised right ear, and scrapes on his ribs and back. Ruiz called an ambulance, which arrived five minutes later. He also interviewed Hurd, who told him defendant had attacked Leonard and ransacked the house.[2] When Ruiz went inside, he noted broken items on the floor; it looked like a fight had happened.

On January 23, 2019, Officer Steve Bejar arrested defendant as he was walking out of Leonard's house. Defendant's hands and knuckles had scrapes and scarring on them, and his right hand was more swollen than his left hand. Defendant didn't have any cuts on the palms of his hands, however.

2.      **Defendant's Testimony**

Defendant testified at trial. He had lived with Leonard since December 2018. On the day of the incident, he got into a verbal disagreement with Leonard, who had been drinking. As they argued, Renee intervened and grew agitated. Defendant responded by uprooting a plant and dumping food onto the floor. But he and Leonard did not get into a physical fight. Defendant left the house and did not come back until later that night.

---

[2] Ruiz did not note on his police report that Hurd seemed intoxicated. Nor did Leonard seem intoxicated when Ruiz spoke to him at the hospital. At trial, however, Hurd testified that she and Leonard were both intoxicated that day. Hurd didn't remember much because she was "out of it" from drinking too much alcohol while taking psychiatric medication. But she did remember that Leonard was so drunk he had trouble balancing and was slurring his words. Leonard is a violent drunk.

Defendant acknowledged Renee told the 911 operator that he had jumped on Leonard and that Renee is honest and respected by the family. Defendant also agreed that when he was arrested, he had a cut on the back of his hand, and his right hand was swollen. Defendant is right-handed.

## DISCUSSION

Defendant contends that he was denied the right to present a defense when the court excluded three defense witnesses; that the prosecutor committed prejudicial misconduct by disparaging defense counsel and misstating the burden of proof; and that the trial court did not understand its discretion to strike his serious-felony prior.

**1.  The court properly ruled that the defense witnesses were irrelevant.**

Defendant argues he was denied his right to present a defense because the court excluded three proffered defense witnesses who would have testified that Hurd was a drug user and Leonard was a violent liar. We conclude the court did not abuse its discretion by excluding the testimony

### 1.1.  Legal Principles and Standard of Review

Only relevant evidence is admissible. (Evid. Code, § 350.) Relevant evidence is "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (*Id.*, § 210.) The trial court has discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or

5

(b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*Id.*, § 352.)

Although a defendant has a due process right to present all relevant evidence that has significant probative value to his defense, in general, " 'the ordinary rules of evidence do not impermissibly infringe on the accused's right to present a defense.' " (*People v. Jones* (1998) 17 Cal.4th 279, 305.) A defendant is not entitled to engage in an unlimited inquiry into collateral matters. (*People v. Homick* (2012) 55 Cal.4th 816, 865.) Nor is he entitled to attack a witness's credibility or to prove another issue relevant to his defense with "time-consuming and remote evidence that was not obviously probative on the question" at issue. (*People v. Dement* (2011) 53 Cal.4th 1, 52, disapproved on other grounds in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)

We review a court's decision to admit or exclude evidence for abuse of discretion, and we will not disturb the court's decision "except on a showing the ... court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.)

### 1.2.   The Excluded Evidence

At a pretrial hearing, defendant notified the court of his intent to call three impeachment witnesses and to mention their testimony during his opening statement. The prosecutor objected to the witnesses on relevance grounds: None of the witnesses observed the crime; Leonard would not be testifying; and there was no allegation of self-defense.

The first witness would testify that after he argued with Leonard one day, Leonard called the police and lied to them,

claiming the witness had a gun during the argument. The witness would also testify that Hurd used drugs.[3] Defendant argued this testimony was relevant to Leonard's and Hurd's credibility.

The second witness was also offered to impeach Leonard's credibility. That witness would testify that two years before, Leonard was upset and fired a gun in the direction of his son.[4]

The third witness would testify that six years earlier, he had seen Leonard being beaten up by two people he believed to be crack dealers. He would testify that Leonard was always drinking and getting into fights.

The trial court excluded the proffered testimony, finding Leonard's credibility to be irrelevant and finding the proffer regarding Hurd to be insufficient. The court held that defense counsel could not mention this evidence during opening statements, but said that if the testimony became relevant in the future, the court would revisit the issue.[5]

---

[3] Counsel offered that this witness "hung out with her years ago. He knew her to be a drug user."

[4] It is unclear from the transcript whether Leonard was alleged to have fired the gun at his own son or at the witness's son.

[5] The People argue, based on this remark, that defendant forfeited this issue by failing to renew his request during trial. We disagree. The court ruled that the defense could not "talk[ ] about those statements … until we have some credibility." That is, "based on what I know at this point," the statements were not admissible. But if "the door is open at some point and that becomes relevant, maybe." Put another way, if the state of the evidence changed—for example, if defendant testified that he acted in self-defense or the prosecutor unexpectedly called Leonard to the stand—the court would revisit its ruling. But the state of the evidence did not change. As such, defendant had no obligation to renew his request.

### 1.3. The court did not abuse its discretion by excluding the prior-acts evidence.

First, as to Hurd, defendant sought to introduce evidence that Hurd had used drugs some unspecified number of years earlier. But counsel did not explain how that prior drug use was relevant to either Hurd's credibility or to her ability to observe the assault. As such, the court properly excluded the testimony. (See *People v. Morrison* (2004) 34 Cal.4th 698, 712.) Regardless, even without that testimony, the jury was invited to consider the relationship between Hurd's substance use and her observations of the assault because Hurd herself testified that she was intoxicated that day.

Second, defendant also sought to present testimony that Leonard had lied to the police three years before the assault in this case. Although counsel argued that evidence was relevant to Leonard's credibility, Leonard's credibility was not an issue. Leonard was not going to testify at trial, and the prosecution did not introduce any statements from him.

Third, defendant wanted to introduce evidence of Leonard's prior violence. A victim's propensity for violence is admissible if the defendant alleges he acted in self-defense. (Evid. Code, § 1103, subd. (a)(1).) But here, defendant made no such claim. As such, Leonard's past fights were irrelevant. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 828 ["Where no evidence is presented that the victim posed a threat to the defendant," the trial court may exclude evidence of the victim's propensity for violence].)

Because the proffered testimony was irrelevant to the issues in this case, the trial court did not abuse its discretion by excluding it—and exclusion of the evidence did not violate defendant's right to present a defense.

## 2. Prosecutorial Misconduct

Defendant contends the prosecutor committed misconduct by disparaging defense counsel and misstating the burden of proof. We hold that the prosecutor's comments about defense counsel did not amount to disparagement, and any error in defining proof beyond a reasonable doubt was cured by the trial court's timely admonishment.

### 2.1. Legal Principles and Standard of Review

" 'The applicable federal and state standards regarding prosecutorial misconduct are well established. " 'A prosecutor's ... intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " [Citation.]' [Citation.]" (*People v. Hill* (1998) 17 Cal.4th 800, 819.) Here, defendant argues the prosecutor's comments violated state law.

### 2.2. Proceedings Below

During the prosecutor's rebuttal argument, the following exchange occurred:

> Prosecutor (P): I'm going to conclude with talking about three broad categories of consideration. The first is your job as jurors in this trial, which [defense counsel] also touched on. And your job, the oath that you took, is to fairly evaluate all of the

evidence and only the evidence that was presented in this case. You have to follow the law as presented to you, even if you disagree with it, and you must be judges of the facts. Do the facts in this case show that a crime happened, and that the defendant committed it? It is not to make up a better story, and it is not to speculate about what other evidence may have been, what other evidence may have said. *You are instructed repeatedly not to speculate, and it is interesting that [defense counsel] continues to ask you to do so.*

Defense Counsel (D): Objection.

P:  You are not to consider the consequences of any kind of outcome in this case. You are simply to decide did a crime happen and did the defendant commit it.

Moreover, you are not to require an absence of all doubt. This leads me to the second category, which is the standard of proof, proof beyond a reasonable doubt. *I'm not going to spend half of my presentation talking about reasonable doubt*, but I will simply point out as I did to you in jury selection, that proof beyond a reasonable doubt is not proof beyond a shadow of a doubt; it is not proof beyond all doubt; *it is not proof to an absolute certainty.*

Even though we heard a good five-minute presentation on the standard of law, it is true

that *in this building, in other courthouses in Los Angeles County and indeed in criminal courthouses across the United States, juries convict beyond a reasonable doubt, proof beyond a reasonable doubt, all the time. It is not an impossible standard. It is a very practical standard that's applied in every criminal case in this country.*

D:     Objection, your honor.

Court:  Burden of proof is beyond a reasonable doubt. You have to have an abiding conviction of the truth of the charge. I don't want you to minimize that in any way. It's not beyond all possible doubt. But don't minimize it either. It is to an abiding conviction of the truth of the charge. You may proceed.

P:     It is proof that leaves you with an abiding conviction that the charge is true. It is proof that the lasting understanding of what happened, that a crime in this case occurred, and that the defendant committed that crime.

(Italics added.)

### 2.3.  The prosecutor's remarks did not disparage defense counsel.

Characterizing defense counsel as a liar can destroy a fair trial. That's why a prosecutor commits misconduct in closing argument if he distinguishes defense counsel's role of protecting a client from the prosecutor's role of seeking the truth. (*People v. Sandoval* (1992) 4 Cal.4th 155, 183–184; *People v. Bell* (1989) 49

11

Cal.3d 502, 538 [improper to imply defense counsel is free to deceive the jury]; *People v. Perry* (1972) 7 Cal.3d 756, 789–790 [improper to accuse defense counsel of fabricating a defense].) But as long as he does not attack counsel personally, a prosecutor has wide latitude to attack defense counsel's arguments. (*People v. Benmore* (2000) 22 Cal.4th 809, 846; *People v. Williams* (1997) 16 Cal.4th 153, 221 [" ' "argument may be vigorous as long as it amounts to fair comment on the evidence" ' "].)

Based on the record before us, the prosecutor in this case "did not engage in such forbidden tactics as accusing defense counsel of fabricating a defense or factually deceiving the jury. [Citations.]" (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1154, disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) To the contrary, when the remarks are viewed in context, it is clear "the prosecutor's comment was aimed solely at the persuasive force of defense counsel's closing argument, and not at counsel personally." (*Zambrano*, at p. 1155; see *People v. Cunningham* (2001) 25 Cal.4th 926, 1003 [no misconduct where prosecutor's argument "would be understood by the jury as an admonition not to be misled by the defense interpretation of the evidence, rather than as a personal attack on defense counsel"].)

Certainly, the statements in this case were no more disparaging than those the California Supreme Court has previously upheld. (See, e.g., *People v. Stanley* (2006) 39 Cal.4th 913, 952 [no misconduct where prosecutor argued counsel " 'imagined things that go beyond the evidence,' " was on an " 'imaginary trip,' " and told the jury a " 'bald-faced lie' "]; *People v. Medina* (1995) 11 Cal.4th 694, 759 [no misconduct where prosecutor said counsel can " 'twist [and] poke [and] try to draw

12

some speculation, try to get you to buy something' "]; *People v. Gionis* (1995) 9 Cal.4th 1196, 1215–1216 [argument that defense counsel was talking out of both sides of his mouth and that this was " 'great lawyering' "]; *People v. Breaux* (1991) 1 Cal.4th 281, 306–307 [argument that law students are taught to create confusion when neither the law nor the facts are on their side because confusion benefits the defense]; *People v. Bell*, *supra*, 49 Cal.3d at p. 538 [argument that defense counsel's job is to " 'confuse' " jurors and " 'throw sand' " in their eyes and that counsel " 'does a good job of it' "].)

We conclude, therefore, that although the prosecutor argued defense counsel had asked the jury to speculate contrary to certain instructions, the remark did not impermissibly disparage defense counsel.

### 2.4. Any error in misstating the burden of proof was cured by the court's admonition.

As the California Supreme Court has "often explained, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements [citation].' [Citation.] … To establish misconduct, [appellant] need not show that the prosecutor acted in bad faith. [Citation.] However, she does need to 'show that, "[i]n the context of the whole argument and the instructions" [citation], there was a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.' [Citation.] If the challenged comments, viewed in context, 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.' [Citation.]" (*People v. Cortez* (2016) 63 Cal.4th 101, 130 (*Cortez*).)

13

In *Cortez*, the prosecutor argued during rebuttal: " 'The court told you that beyond a reasonable doubt is not proof beyond all doubt or imaginary doubt. Basically, I submit to you what it means is you look at the evidence and you say, "I believe I know what happened, and my belief is not imaginary. It's based in the evidence in front of me." ' Defendant's counsel objected that these comments 'misstate[d] the law.' Before the court ruled on the objection, the prosecution added, 'That's proof beyond a reasonable doubt.' The trial court then overruled the objection." (*Cortez*, *supra*, 63 Cal.4th at p. 130.)

The Supreme Court first "observe[d] that the challenged remarks, viewed in isolation, were incomplete at best" in defining the beyond a reasonable doubt standard. (*Cortez*, *supra*, 63 Cal.4th at p. 131.) The court nevertheless found that, "viewing the challenged statements in context, [there was] no reasonable likelihood that jurors understood them as defendant asserts," i.e., as lowering the prosecution's burden of proof. (*Ibid.*) The court explained: "Initially, in determining how jurors likely understood the prosecution's arguments, we do ' "not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." ' [Citations.]" (*Ibid.*)

In light of that principle, the *Cortez* court found it "significant that the trial court properly defined the reasonable doubt instruction in both its oral jury instructions and the written instructions it gave the jury to consult during deliberations. ... As we have explained, '[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate

14

in an attempt to persuade.' [Citation.]" (*Cortez*, *supra*, 63 Cal.4th at p. 131.) Indeed, the trial court had "emphasized in several ways that jurors should follow its instructions rather than anything potentially contrary in counsel's arguments." (*Id.* at p. 132.) The Supreme Court also found it significant that defense counsel had emphasized the reasonable doubt instructions during his closing argument, and the prosecutor's comments on reasonable doubt had specifically referred the jury to the court's instruction on that subject, which made it unlikely that jurors would have understood the prosecutor's challenged statement as a repudiation of the court's instructions or an invitation to the jury to disregard them. (*Id.* at pp. 132–133.)

Our high court concluded: "In summary, given that the challenged comments were brief and constituted a tiny, isolated part of the prosecution's argument, that the prosecution was responding to defense counsel comments, that the prosecution expressly referred the jurors to the instruction they had on reasonable doubt, that both the court and defense counsel properly defined 'reasonable doubt' numerous times, and that the jury had written instructions during deliberations that properly defined the standard, we find no reasonable likelihood the jury construed or applied the prosecution's challenged remarks in an objectionable fashion. We therefore reject defendant's misconduct claim." (*Cortez*, *supra*, 63 Cal.4th at pp. 133–134.)

In this case, as in *Cortez*, the court properly instructed the jury on the burden of proof; defense counsel accurately defined reasonable doubt; and the prosecutor's misstatement made up a small part of his remarks. To be sure, the prosecutor's comments minimizing his burden in this case differed from those in *Cortez*. Unlike in *Cortez*, however, the trial court in this case

15

immediately admonished the jury: "Burden of proof is beyond a reasonable doubt. You have to have an abiding conviction of the truth of the charge. I don't want you to minimize that in any way. It's not beyond all possible doubt. But don't minimize it either. It is to an abiding conviction of the truth of the charge. You may proceed." In response, the prosecutor corrected his earlier statement: "It is proof that leaves you with an abiding conviction that the charge is true."

In sum, we conclude that the court's timely intervention and the prosecutor's acknowledgement of the court's admonition were sufficient to cure any harm from the prosecutor's misstatement. On this record, there is no reasonable likelihood that the jury applied the prosecutor's comments in a way that reduced the burden of proof.

3. **There is no evidence that the court misunderstood the scope of its sentencing discretion.**

Finally, defendant contends the court misunderstood its sentencing options and asks us to remand for the court to exercise its discretion to strike the five-year serious-felony prior (§ 667, subd. (a)). Defendant reasons that although the court exercised its discretion to strike the prior under *Romero*, *supra*, 13 Cal.4th 497, it did not explain why it was not *also* striking it for purposes of the five-year enhancement, as might be expected if the court were aware of its discretion. We disagree.

In this case, defendant was sentenced nine months after Senate Bill No. 1393 (2017–2018 Reg. Sess.) granted courts the discretion to strike serious-felony priors. (*People v. Stamps* (2000) 9 Cal.5th 685, 693.) We presume a trial court is aware of its discretionary sentencing choices. (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.)

16

Moreover, it appears from the sentencing transcript that the court was indeed aware of the scope of its discretion. First, when ruling on the *Romero* motion, the court said it would strike the prior strike, and "to that extent, I am going to grant the *Romero* motion." The court's comment implies that it would not be granting defendant the full scope of his requested relief.

Second, the court explained it was selecting the low term for count 1 "because the court *is going to impose* the five years for the prior conviction in 667(a) … ." (Italics added.) That remark indicates the court understood it had the discretion *not* to impose the serious-felony prior.

Third, when discussing defendant's sentence for count 2, which the court stayed under section 654, the prosecutor asked if the court planned to impose and stay the five-year prior under section 654. The court replied that the serious-felony prior "would run consecutive to the entire sentence because these are determinate [terms]. So that five-year prior is added to the entire sentence. That five-year prior is consecutive to whatever is imposed. Theoretically, his sentence [for count 2] is four [years]. I'm not staying the five. The five is being imposed on count 1."

Taken together, the record before us does not indicate that the court misunderstood the scope of its discretion.

17

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

                                                             LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.